OPINION OF THE COURT
Howard E. Goldfluss, J.
The parties herein have requested an advance ruling by this court as to the permissibility of the prosecutor to cross-examine defendants as to statements which have previously been suppressed at a pretrial hearing. To make this determination, the full meaning and thrust of Harris v New York (401 US 222) must be analyzed.
Each of the defendants made two statements. The first was made orally, shortly after their arrest. The second was made approximately four hours later, were video taped, and were responses to questions posed by an Assistant District Attorney.
Referring first to the defendant Gonzalez, this court suppressed both statements, but for different reasons. Based on the credible evidence, this court found that Gonzalez received and understood the Miranda warnings, but that the ensuing statements were obtained involuntarily through physical duress or coercion. The later video-taped state *802 ments were suppressed because this court found that they were obtained after the criminal proceeding had commenced (see People v Settles, 46 NY2d 154; People v Blake, 35 NY2d 331; People v Samuels, 49 NY2d 218). As such, the right to counsel had attached, and Gonzalez had not waived counsel when he made his video-taped statement.
It is by reason of the stated difference in basis for suppression that this court will not permit the District Attorney to cross-examine the defendant as to the first statement, but will permit him to do so as to the second.
In Harris v New York (supra) the Supreme Court held that statements obtained in violation of a defendant’s rights under Miranda v Arizona (384 US 436), and thus inadmissible as evidence in chief, may nevertheless be used to impeach the defendant’s credibility. A condition of such usage is that such evidence “satisfies legal standards”. (See, also, Oregon v Hass, 420 US 714; People v Wise, 46 NY2d 321.)
What concerned the court in Harris was whether such evidence was trustworthy despite its suppression. It is clear that a defendant may never be impeached by a statement obtained involuntarily as a result of physical duress (see Mincey v Arizona, 437 US 385) or compulsion (see New Jersey v Portash, 440 US 450). It does not necessarily follow that statements acquired in that manner are unlikely to be true. The basic reason for their exclusion is that the methods used to extract them so offend the Constitution and so violate the interests of justice that they cannot be evidence for any purpose (see Rogers v Richmond, 365 US 534). As was pointed out in People v Washington (51 NY2d 214), trustworthiness and voluntariness are not synonymous. For example, in New Jersey v Portash (supra), the court found- the statement, which had been compelled under a grant of immunity during appearances before a Grand Jury, inadmissible because of its patent involuntariness. Significantly, the court saw fit to characterize his testimony as apparently trustworthy. Nevertheless, that was immaterial because the Fifth and Fourteenth Amendments provide a privilege against compelled self incrimination, not merely against unreliable self incrimination.
*803 Involuntarily obtained evidence can never satisfy legal standards. This was the law long before Miranda was decided. The intent of the Miranda case was the fixing of a procedure to conform to the preservation of basic constitutional rights of the accused under the Fifth and Fourteenth Amendments. If the procedure was not followed, the prosecutor would be prevented from eliciting statements of the accused on his direct case. In Harris, the court clarified this mandate, stating that if the defendant chose to testify, and his statement was not acquired through duress or coercion, he was subject to being confronted and questioned about such statements on the issue of his credibility. In other words, Harris gave notice that Miranda did not afford accused who made such statements which would be otherwise acceptable evidence, a license to commit perjury.
In a pretrial hearing, this court found that the oral statement given by the defendant Gonzalez was indeed procured through duress or coercion.
He testified that he was beaten, that he suffered a head wound, that he was bleeding when booked at the precinct, and that an ambulance was called by the arresting officer to attend his wounds. The officer testified that he did see the laceration, did see the blood, did call for the ambulance. The officer’s testimony was vague as to how defendant Gonzalez received his wounds. Based on the testimony, this court made a finding of fact that he did make the statements under physical duress and/or coercion and made the conclusion of law that the statements were inadmissible. Under this finding, the statement may not be used for any purpose. Under no circumstances should a jury hear a statement which was extracted from an accused in a manner which patently offends the principles of the Fifth and Fourth Amendments (see Rogers v Richmond, 365 US 534, supra).
The second statement, given four hours later to an Assistant District Attorney, presents a different perspective. The accusatory instrument was subscribed to under the prearraignment policy in Bronx County. It is axiomatic that a defendant is entitled to counsel at all critical stages of the proceedings (People v Settles, 46 NY2d 154, supra) *804 and that the right to counsel attaches once the criminal action had been commenced (see People v Blake, 35 NY2d 331, supra). The mere fact the formal arraignment had not begun, mainly by reason of the fact that Bronx County had no Sunday evening arraignment Judge scheduled could not be a basis of waiver of this strict requirement. All that stood between the entry of counsel into the proceedings and no representation was the ministerial act of arraignment, which was not possible because of the nonavailability of an arraignment Judge. Therefore, by reason of authority herein stated, the subsequent video-taped statements were suppressed.
Making such finding did not require reaching the question of whether such video-taped statement was also given under duress or coercion. However, for the purpose of deciding whether the prosecutor may cross-examine the defendant Gonzalez as to those previous statements, such determination must now be made.
Upon all the credible evidence, this court concludes that when that later statement was made, it was given voluntarily, free of duress or coercion. A viewing of the videotaped statements indicated clearly to the contrary.
Indeed, the defendant Gonzalez indicated that the prior oral statement was given partially as a result of the beating he received, and that he recanted it. Specifically, with reference to his prior statement, he said: “I was scared a little, you know, they beat me up, I didn’t say anything you know. You lie so they won’t hit you no more”. The manner of his responses to the Assistant District Attorney’s questions, the relaxed atmosphere of the inquiries, and the recantation itself, all lead this court to conclude that the reponses unlike those four hours prior, were freely given.
That being the case, the rationale of Harris v New York (401 US 222, supra) must apply. The “trustworthiness” of the evidence of the statement has not been affected by the taking of such statement after right to counsel attached.
Accordingly, if the defendant Gonzalez elects to testify in his own behalf, he may not be cross-examined as to the oral statements previously.
*805 However, as to the video tape, for reasons herein stated, such cross examination will be permitted on the issues of credibility and/or prior inconsistent statements. Of course, this will be allowable only if Gonzalez denied making them or testifies contrarily to such statements.
As to the defendant Orlando Joseph, his oral statements were not suppressed and the People may use same on their direct case. However, as to his video-taped statements, the ruling herein as to Gonzalez applies to him as well.