396 S.E.2d 402

**STATE of West Virginia**

v.

**Jesse Braden KING.**

No. 18391.

Supreme Court of Appeals of
West Virginia.

June 28, 1990.

Webster J. Arceneaux, III, McIntyre, Haviland & Jordan, Charleston, for Jesse Braden King.

Roger W. Tompkins, Atty. Gen., Joanna I. Tabit, Asst. Atty. Gen., Attorney General's Office, Charleston, for State of W.Va.

McHUGH, Justice:

This case is before the Court upon the appeal of Jesse Braden King. The appellant was convicted of incest, in violation of *W. Va. Code,* 61–8–12 [1984],[1] in the Circuit Court of Braxton County.

## I

On July 11, 1984, Trooper Fred Morgan of the West Virginia State Police was called to the Braxton County Hospital to investigate what had been reported as a sexual assault. The alleged victim was S.J.K.,[2] a thirteen-year old daughter of the appellant.

The next day, July 12, 1984, Trooper Morgan accompanied S.J.K. to the scene of the alleged sexual assault and interviewed the alleged victim. During his investigation, Trooper Morgan began to doubt the veracity of the victim's story. Trooper Morgan interviewed S.J.K. again, and during this second interview, S.J.K. told Trooper Morgan that no sexual assault had occurred as reported earlier. She also told Trooper Morgan that her father, the appellant in this case, had sexually assaulted her several times, and that she had fabricated the reported sexual assault story because she needed medical attention as a result of the sexual intercourse with her father.

Trooper Morgan arrested the appellant for incest and removed S.J.K. and her two sisters, B.K., 17, and S.K., 15, from the family home.

Trooper Morgan interviewed the appellant, his three daughters, and one of his sons, individually, on videotape. The four children all related stories of sexual encounters that the appellant had with his three daughters.

The appellant was indicted on three counts of incest, in violation of *W. Va. Code,* 61–8–12 [1984], each count alleging incest with a different daughter. The appellant moved for separate trials, and such motion was granted.

The appellant was tried on the third count of the indictment, an incest charge involving S.K. The jury was unable to reach a verdict, and a mistrial was declared.

The appellant was then tried on the first count of the indictment, the incest charge involving S.J.K. The appellant was convicted of incest. The appellant's motion for a new trial was denied, and the appellant was sentenced to a five-to-ten-year sentence in the state penitentiary.

The appellant raises several assignments of error which he claims gave rise to his conviction. For the following reasons, we find no merit to the appellant's contentions, and we affirm the judgment of the Circuit Court of Braxton County.

## II

The primary issue in this appeal is whether the circuit court erred by admitting into evidence a videotaped interview of a defense witness as a prior inconsistent statement.

As noted in section I of this opinion, four of the appellant's children were interviewed on videotape by Trooper Morgan. During one of these interviews, B.K., one of the appellant's daughters, stated that she and her sisters had sexual intercourse with her father.

During the trial, however, B.K. was called as a *defense* witness, and during the appellant's case-in-chief, testified on direct examination that she had previously lied about her father having sex with her, because, among other things, she was afraid of Trooper Morgan and claimed that he coerced her into stating that her father had sex with her. Consequently, the State,

---

1. *W. Va. Code,* 61–8–12 was amended in 1984 and again in 1986. Although several of the events in this case transpired prior to the 1984 amendment, it is not clear from the record the exact dates of many of the events.

 However, the changes resulting from the 1984 and the 1986 amendments are not relevant to this case.

2. Consistent with our practice in cases involving sensitive matters, we use the victims' initials rather than their full names. *See In re Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989) (citing cases).

during its cross-examination of B.K., attempted to impeach the witness' credibility[3] by introducing into evidence testimony from a child abuse and neglect proceeding[4] as well as testimony from the trial of a previous count of the appellant's indictment.

During its rebuttal, the State also introduced into evidence the videotaped interview of B.K. in order to: (1) support its contention that B.K. was not coerced by Trooper Morgan; and (2) to rebut B.K.'s testimony that she previously lied, by showing that she was credible at the time she spoke with Trooper Morgan. Trial counsel for the appellant objected to the introduction of the videotaped interview.

The circuit court admitted the videotaped interview into evidence, and gave a limiting instruction which was proposed by the appellant. That instruction stated:

The State in this case has requested that the Court permit the jury to view a video tape interview of the witness, [B.L.K.], that was conducted by Fred Morgan on the issue of the credibility of the witness. Now the issue—the credibility of a witness relates to the believability of the witness, and of course the jurors are to determine the credibility of the witnesses and the jurors are to determine the weight and credit the testimony of any and all witnesses that would be given. You weigh the testimony of the witnesses and you determine the credibility. The credibility goes to the issue of the believability. The tape that you will be permitted to see and hear the video tape [sic], is offered on the issue of credibility. It is admitted solely on the issue of the credibility of the witnesses, [B.L.K.] and Fred Morgan. The statements on the

tape are in the nature of hearsay as to this trial. You are not to consider any of the statements on the tape as proving the truth of what is said in the statement. You're not listening to that. You're listening to the statement on the issue of the credibility of the witnesses. You may consider the statements on the—only on the issue of the credibility of [B.L.K.] and Fred Morgan, that is the believability of these two particular witness[es] and their testimony. The things that's [sic] on the tape are not offered to you for the purposes of establishing or proving the truth of anything that was said in this statement. It goes to the issue of the credibility and the weight of the testimony of the witness, [B.L.K.] and the witness, Fred Morgan. That— with that instruction the Court now instructs that the video tape be played to the jury.

Trial Tr. 494–95.[5]

The appellant contends that the use of the videotaped intereview was an improper method of impeaching the defense witness, B.K. The appellant claims that because B.K. admitted making the prior inconsistent statements, by testifying that she had previously lied, then introduction of the videotaped interview into evidence was not necessary, but, rather, prejudicial.

We have previously recognized, in a civil case, the broad discretion of a trial court in admitting videotapes into evidence. "A trial court is afforded wide discretion in determining the admissibility of videotapes and motion pictures." Syl. pt. 1, *Roberts v. Stevens Clinic Hospital, Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986). In *Roberts,* a videotape was admitted into evidence for

---

**3.** The State attempted to impeach the credibility of B.K. during the appellant's case-in-chief as well as during the appellant's surrebuttal.

**4.** The child abuse and neglect proceeding was, in large part, directly related to this matter. This civil proceeding, involving the Department of Human Services, was conducted pursuant to *W.Va.Code,* 49–6–1 to 49–6–10, as amended.

**5.** Similarly, during the instructional part of the trial, the circuit court gave "Defendant's Instruction No. 2," which stated:

> The tape is being admitted solely on the issue of the credibility of the witnesses, [B.L.K.] and Fred Morgan. The statements on the tape are in the nature of hearsay as to the trial. You shall not consider any of the statements on the tape as evidence of anything asserted in those statements. You may consider them only on the issue of credibility of [B.L.K.] and Fred Morgan.

*substantive* purposes. Obviously, in a criminal case, our focus would be geared more to deciding whether or not the criminal defendant was prejudiced by the admission of a videotape into evidence.[6]

Because this issue involves the prior statement of a witness, initially Rule 613 of the *West Virginia Rules of Evidence* must be examined. That rule provides:

> Rule 613. Prior Statements of Witnesses. (a) *Examining Witness Concerning Prior Statement.*—In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.
>
> (b) *Extrinsic Evidence of Prior Inconsistent Statement of Witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

Professor Cleckley has written about the distinction between subdivisions (a) and (b) of Rule 613:

> Intrinsic evidence involves the witness who made the prior statement being interrogated as to the existence and content of the statement. This form of impeachment by prior inconsistent statement is controlled by Rule 613(a). *Extrinsic evidence* entails either calling a third party to testify to the existence and content of the prior inconsistent statement or presenting some documentary or *recorded form of the statement.* Rule 613(b) provides the requirements for ex-

trinsic proof of a prior inconsistent statement.

> F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4.2(B), at 159 (2d ed. 1986) (emphasis supplied).

We do not agree with the appellant's contention that the correct procedure for impeachment was not followed under Rule 613(b). Rather, Rule 613(b) *supports* the circuit court's decision to admit the videotaped interview as extrinsic evidence of a witness' prior inconsistent statement. Again, Rule 613(b) provides, in part: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible *unless* the witness is afforded an opportunity to explain or deny the same[.]" (emphasis supplied). The witness, B.K., was obviously afforded an opportunity to not only admit to making the prior inconsistent statements, but also to explain why she made such statements. "Where extrinsic evidence is introduced, Rule 613(b) of the Rules of Evidence requires that the impeached witness be afforded an opportunity to explain the inconsistency[.]" *State v. Holmes,* 177 W.Va. 236, 239, 351 S.E.2d 422, 426 (1986).

Accordingly, the foundational requirements of Rule 613 were met in this case.[7]

It is often held that "[i]f a witness unequivocally admits the inconsistencies in a prior statement before extrinsic evidence of the statement has been offered, the extrinsic evidence will usually be excluded as cumulative and unnecessary." 2 G. Joseph & S. Saltzburg, *Evidence in America* § 47.3, at 4–5 (1987). *See State v. Johnson,* 220 Neb. 392, 401, 370 N.W.2d 136, 142 (1985); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4.2(b), at 161, 163 (2d ed.1986); *McCormick on Evidence* § 37, at 79 (E. Cleary 3d ed.1984);

---

**6.** We recognize that Rule 1001(2) of the *West Virginia Rules of Evidence* defines "photograph" as including "video tapes." However, that definition pertains only to Rules 1001 to 1008, which deal with the "Contents of Writings: Recordings and Photographs," but which are not before us in this case.

**7.** We note that recently, in *State v. Collins,* 186 W.Va. 1, 409 S.E.2d 181 (1990), we dealt with the issue of the State impeaching its *own* witness pursuant to Rule 607 of the *West Virginia Rules of Evidence. Id.,* syl. pt. 3. In this case, however, we deal with a situation where the State has impeached a *defense* witness.

3 J. Weinstein & M. Berger, *Weinstein's Evidence* para. 613, at 613–3 (1988).[8]

On the other hand, it has been recognized that "[e]ven where the witness *admits* having made the other statements, this does not prevent the opponent from offering it in evidence by his own witnesses[.]" 3A J. Wigmore, *Evidence in Trials at Common Law* § 1037 (J. Chadbourn rev. ed. 1970 & Supp.1990) (emphasis in original).[9]

These two differing views on whether extrinsic evidence is admissible where the witness has admitted making the prior inconsistent statement have emerged and have been discussed by many authorities. Leading these views are Professors McCormick and Wigmore. Professor McCormick contends that extrinsic evidence in such circumstances should be inadmissible. Professor Wigmore, however, maintains that such evidence should be admissible.

In *Bentley v. State*, 397 P.2d 976 (Alaska 1965), the Supreme Court of Alaska discussed in detail these divergent views. There, the defendant was tried for assault with a dangerous weapon. A witness for the prosecution testified that she saw the defendant stab the victim with a knife. The defendant attempted to introduce into evidence a tape recording which contained a statement of the witness to the appellant that she had never seen a knife during the incident. As in the case now before this Court, the witness in *Bentley* admitted making the prior inconsistent statement. The trial court did not allow the tape recording to be admitted into evidence. In reversing the trial court, the Supreme Court of Alaska discussed the conflicting views on this issue:

On this question divergent views have been expressed by the courts and legal writers. One view is that once a witness admits having made a statement conflicting with his present testimony, that ends the inquiry and further proof of the conflicting statement should not be allowed. This view is espoused by Professor McCormick. On the other hand, the position taken by other courts is that even where a witness admits having made a contradictory or inconsistent statement, that should not prevent the introduction of the statement in evidence for impeachment purposes. This is the view adopted by Professor Wigmore.

We believe that the latter view which would permit introduction of the tape recording should govern in the circumstances of this case.... Mrs. Fambrough's credibility, which was for the jury to determine, became an important factor in the case. Her credibility was undoubtedly impaired to some extent when she at first denied and then later admitted having told appellant that she had never seen a knife. But we think that the matter should not have ended there. The jury had the duty of appraising Mrs. Fambrough's trustworthiness. Such an appraisal might have been made with far greater discernment if the jury had been permitted to hear the taped conversation rather than being limited to hearing only Mrs. Fambrough's simple, unemphatic admission that she made a statement to appellant which was inconsistent with her testimony at the trial. The jury ought to have had the opportunity to consider the circumstances in which Mrs. Fambrough conversed with

**8.** *See also United States v. Jones*, 578 F.2d 1332, 1340 (10th Cir.), *cert. denied sub nom. Janko v. United States*, 439 U.S. 913, 99 S.Ct. 284, 58 L.Ed.2d 259 (1978); *G & R Tire Distributors, Inc. v. Allstate Insurance Co.*, 177 Conn. 58, 61, 411 A.2d 31, 33 (1979); *Fuselier v. State*, 468 So.2d 45, 49–50 (Miss.1985); *Muhleck v. Tamanini*, 271 S.C. 57, 58–60, 244 S.E.2d 535, 536 (1978).

**9.** *See also Gordon v. United States*, 344 U.S. 414, 420, 73 S.Ct. 369, 374, 97 L.Ed. 447, 454 (1953); *Patterson v. United States*, 361 F.2d 632, 635 (8th Cir.1966); *People v. Williams*, 22 Ill.2d 498, 504, 177 N.E.2d 100, 103 (1961), *cert. denied*, 369 U.S. 806, 82 S.Ct. 646, 7 L.Ed.2d 552 (1962); *People v. Schainuck*, 286 N.Y. 161, 165, 36 N.E.2d 94, 96 (1941).

In *State v. Holmes*, 177 W.Va. 236, 351 S.E.2d 422 (1986), this Court affirmed a first degree sexual assault conviction where the trial court allowed the prosecution to recall a defense witness who recanted his prior testimony during the initial cross-examination by the prosecution. In that case, the *per curiam* opinion focused on the trial judge's "right to control the orderly process of a trial[.]" Syl. pt. 1, in part.

appellant and to weigh what she actually said against her testimony at the trial in order, if possible, to ferret out every detail of the motive which induced her to say to appellant that she had not seen a knife and then to tell the jury that she had seen one. Such an opportunity was not available to the jury from the cross examination of Mrs. Fambrough to as great an extent as it would have been if they had been permitted to consider the tape recording.

*Id.* at 977–78 (footnotes omitted).

The videotaped interview in this case, as a recorded form of B.K.'s prior inconsistent statement, is extrinsic evidence. The videotaped interview centered on the credibility of B.K., who claimed that she previously lied because she was afraid of Trooper Morgan. At first blush, the fact that she acknowledged making the prior inconsistent statements would seem to render the videotaped interview unnecessary, and, therefore, inadmissible under the view that such testimony is cumulative. However, in light of the unique circumstances before us in this case, we need not decide whether to adopt the view of either Professor McCormick or Professor Wigmore, nor need we decide the soundness of either view.[10]

Often, a prior inconsistent statement will have an advantage over trial testimony. As Professor Cleckley has written:

Research regarding human memory indicates several advantages prior inconsistent statements have over trial testimony. Studies show that the ability to remember an incident declines as time passes. Witnesses are more prone to forget facts supporting propositions with which they disagree. Prior inconsistent statements also may be made *before a motive for perjury has arisen* and perhaps are *less likely to be untruthful.*

F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4.2(B), at 166 (2d ed.1986) (emphasis supplied).

Clearly, this case presents an instance where a witness' prior inconsistent statements do possess a unique advantage over her testimony during the trial in that it allowed the jury to decide the issue of the witness' credibility on two occasions, both of which the jury was able to *observe.*

It has been recognized that prior statements preserved on videotape possess advantages over testimony at trial, as alluded to by Professor Cleckley. *See Richards v. State,* 616 P.2d 870 (Alaska 1980) (videotape of defendant's eight-year-old son reenacting events of manslaughter charge held admissible because eight-year-old had forgotten much of what he had seen on night in question); *Smith v. State,* 6 Ark.App. 228, 233, 640 S.W.2d 805, 808 (1982) (videotape admissible as "original evidence" so as "to permit the jurors to determine firsthand from the videotape the demeanor of [a conspirator] and allow the jury to test his credibility while making the confession."); *People v. Gonzalez,* 106 Misc.2d 801, 805, 435 N.Y.S.2d 532, 534 (1981) ("as to the video-tape, ... cross examination [by the prosecution] will be permitted on the issues of credibility and/or prior inconsistent statements."). *Cf. State v. Bowman,* 741 S.W.2d 10, 14 (Mo.1987) (en banc), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 60 (1988) (videotape of witness' prior inconsistent statement admissible as *substantive* evidence under permitting statute because "the jury should have [the prior inconsistent statement] in the best form for judging its credibility.").

In this case, the utilization of the videotaped interview between Trooper Morgan and B.K. allowed the jury to observe these two key witnesses in a one-on-one encounter immediately following the unfortunate events in this case, with no distractions

---

**10.** In syllabus point 5 of *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981), we held:

While a specific foundation need not initially be made to impeach a witness with a prior inconsistent statement, the witness must be informed of the general nature of his prior inconsistent statement, and be afforded the opportunity to explain or deny the same. There is also a right, if requested, on the part

of his counsel to see any prior written statement or to have disclosed the contents of a prior inconsistent oral statement during the course of interrogation. All of the above is subject to the sound discretion of the trial court.

*Addair,* however, was a *civil* case, decided prior to adoption of the *West Virginia Rules of Evidence.*

which may be common in a courtroom setting or in another formal environment. At this point in technology, we can perceive no better way for the triers of fact to decide a witness' credibility than watching an unedited videotape with accompanying audio, except observing the witness testify live.

Accordingly, the extrinsic evidence in this case, the videotaped interview, was admissible because it assisted the jury in deciding the issue of B.K.'s credibility. Moreover, the jury, on two occasions, was instructed that the videotaped interview was admitted solely on the issue of credibility.[11] These instructions were key to the jury's understanding that the evidence contained on the videotape was not to be considered as substantive evidence, but, rather, for credibility purposes only.

■ The appellant also contends that the prejudicial effects of admitting the videotaped interview into evidence outweighed any probative evidentiary value it may have had.[12] We do not agree.

Specifically, the appellant argues that because the State had several other sources with which to impeach B.K., then the videotaped interview was unnecessary.[13]

However, as alluded to previously, the claim of the witness, B.K., that she was

afraid of Trooper Morgan, gives the videotaped interview a high probative value in assessing her credibility. Trooper Morgan's testimony at the trial and mere transcripts of previous proceedings, in no way, possess the probative value of assessing B.K.'s credibility as does the videotaped interview.

Recently, in syllabus point 5 of *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990), we held that "[t]he balancing test in Rule 403 of the West Virginia Rules of Evidence should be used to determine whether impeachment evidence should be barred because its prejudicial effect outweighs its impeachment value."

In *Collins*, we noted that because "impeachment testimony is offered to attack the credibility of a witness and is not offered for the truth of the matter asserted[,] ... its probative value is not as substantial as that of substantive evidence under the Rule 403 balancing test." *Id.* 186 W.Va. at 9 n. 11, 409 S.E.2d 189 n. 11.

■ Clearly, the probative value of the videotaped interview in this case outweighs any prejudicial effect which it may possess.[14]

■ Accordingly, we hold that a videotaped interview containing a prior incon-

**11.** The appellant contends that the circuit court's comments surrounding the giving of the limiting instruction ran afoul of the following principle set forth by this Court:

> A trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case. With regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury.

Syl. pt. 4, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979).

We do not agree with the appellant's contention in this regard. Our review of the record in this case reveals no improper comments made by the trial judge in giving the limiting instruction.

**12.** Rule 403 of the *West Virginia Rules of Evidence* provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**13.** These other sources included Trooper Morgan's own testimony, transcripts of B.K.'s testimony at the child abuse and neglect proceeding, and B.K.'s own testimony from the trial of a previous count in the indictment.

**14.** Related to this assignment of error, the appellant contends that the circuit court erred by giving "State's Instruction No. 2," which provided:

> The Court instructs the jury that, in considering out of Court statements, you have the right to take into consideration the circumstances under which they were made, the credibility of the witnesses by whom they are detailed, the condition and circumstances of the party alleged to have made them, the probability or improbability of such statements, and that you have the right to consider the same in connection with all the evidence in this case; that you are the sole judges of the credibility of all witnesses and the weight of the evidence, and that you may give to the

sistent statement of a witness who claims to have been under duress when making such statement or coerced into making such statement is admissible into evidence if: (1) the contents thereon will assist the jury in deciding the witness' credibility with respect to whether the witness was under duress when making such statement or coerced into making such statement; (2) the trial court instructs the jury that the videotaped interview is to be considered only for purposes of deciding the witness' credibility on the issue of duress or coercion and not as substantive evidence; and (3) the probative value of the videotaped interview is not outweighed by the danger of unfair prejudice.

■ The appellant also contends that the admission of the videotaped interview gave rise to the improper admission of collateral crimes evidence, in violation of this Court's holding in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986).

> evidence of the witnesses just such weight as you think it entitled to under the circumstances of the case.
>
> Specifically, the appellant contends that this instruction is contrary to the limiting instruction concerning the viewing of the videotaped interview. We do not agree.
>
> While it is true that "[i]nstructions in a criminal case which are confusing, misleading or incorrectly state the law should not be given[,]" syl. pt. 3, *State v. Bolling*, 162 W.Va. 103, 246 S.E.2d 631 (1978), this Court has also held that "[t]he giving of confusing or incomplete instructions does not constitute reversible error where a reading and consideration of the instructions as a whole cure any defects in the complained of instructions." Syl. pt. 4, *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980).
>
> Accordingly, if there was anything confusing or misleading about "State's Instruction No. 2," it certainly was cured by "Defendant's Instruction No. 2," which limited the purpose of the viewing of the videotaped interview.

15. *Dolin* involved Rule 404(b) of the *West Virginia Rules of Evidence*, which provides:

> (b) *Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *Dolin*, the Court held that "[i]t is impermissible for collateral sexual offenses to be admitted into evidence *solely* to show a defendant's improper or lustful disposition toward his victim." Syl. pt. 7 (emphasis supplied).[15]

In this case, the videotaped interview which was admitted into evidence was not introduced for the purpose of showing the appellant's improper or lustful disposition toward S.J.K., the victim in this case. Rather, as stated above, it was introduced to assist the jury in deciding the credibility of a material witness who was not the victim in this case, namely, B.K.[16]

■ Consequently, the Court's holding in *Dolin* was not violated by the introduction of the videotaped interview.[17]

## III

■ The appellant also contends that the circuit court committed reversible error in

16. Even when the issue in a particular sexual offense case is the credibility of a victim, several courts have held that evidence of collateral sexual offenses is admissible "to establish a complete record of events, thereby reducing the incredibility of the victim's testimony." *State v. Dolin*, 176 W.Va. 688, 699, 347 S.E.2d 208, 220 (McHugh, J., dissenting, joined by Brotherton, J.).

17. Because it is clear that credibility was at issue, we also reject the appellant's assertion that the videotaped interview gave rise to the improper admission of hearsay. The appellant points to two cases where this Court held that extrajudicial statements were inadmissible hearsay because the probative value of such statements was outweighed by their prejudicial effect. *State v. Murray*, 180 W.Va. 41, 45, 375 S.E.2d 405, 409 (1988); *State v. Golden*, 175 W.Va. 551, 555, 336 S.E.2d 198, 202 (1985). That is not the case here, however. As addressed in the textual portion of this opinion, the probative value of the videotaped interview, utilized for the purpose of assessing B.K.'s credibility, outweighed any prejudicial effects it may have possessed. Moreover, the circuit court's limiting instruction specifically addressed the "hearsay nature" of the videotaped interview, but admonished the jury to not consider it as proving the truth of the matter asserted. *See State v. Kopa*, 173 W.Va. 43, 55, 311 S.E.2d 412, 424 (1983) (trial court did not commit error in admitting prior out-of-court statement where jury was admonished to only consider statement for credibility purposes).

denying the appellant's motion to recuse the prosecutor's office.

In the trial of this case, the State was represented by Paula Cunningham, an assistant prosecuting attorney in Braxton County. Prior to becoming an assistant prosecutor in Braxton County, Cunningham was in private practice, and was appointed guardian *ad litem* for the appellant's three daughters in the child abuse and neglect proceeding related to the charges in this case.[18] *See supra* note 4.

The appellant alleges that: an appearance of impropriety existed by the assistant prosecutor's representation of the State *and* the appellant's daughters; a conflict of interest existed which may have prevented the assistant prosecutor from fully considering exculpatory evidence; and the assistant prosecutor improperly revealed client confidences while cross-examining her former client during the State's rebuttal. The appellant's contentions in this regard are meritless.

The appellant maintains that it *appears* that the assistant prosecutor was vindicating the private interests of the appellant's daughters and not necessarily those of the State. In support of his contention, the appellant refers to *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401 (1981), wherein this Court held that a prosecutor should have recused himself because, on a previous occasion, the prosecutor was "victimized" by the appellant in that case. *Id.* 168 W.Va. at 623, 285 S.E.2d at 406.

In syllabus point 2 of *State v. Britton*, 157 W.Va. 711, 203 S.E.2d 462 (1974), this

Court held: "As the primary responsibility of a prosecuting attorney is to seek justice, his affirmative duty to an accused is fairness."

*Knight* and *Britton*, however, involved situations where the prosecutor had previously had direct contact *with the defendant*. In this case, the assistant prosecutor was representing a different party *against the defendant* in two separate instances.

In *State v. Riser*, 170 W.Va. 473, 294 S.E.2d 461 (1982), we reiterated the principle that a private prosecutor is subject to as high a standard as that of a public prosecutor, but we also pointed out that there exists a "considerable distinction" between a private prosecutor who *defends*, then prosecutes a defendant and a prosecutor who *prosecutes* a defendant civilly and then *prosecutes* such defendant criminally. *Id.* 170 W.Va. at 478, 294 S.E.2d at 465.

The same logic is applicable to the facts in the case now before us. Accordingly, there is no appearance of impropriety by the assistant prosecutor's representation of the State in this case, and the circuit court did not commit error by denying the appellant's recusal motion in that regard.

The appellant also maintains that the assistant prosecutor was in such a position that she could not pursue possible exculpatory evidence, specifically, that B.K. was recanting her story. As previously noted in section II of this opinion, however, the assistant prosecutor did, in fact, address B.K.'s recantation during cross-examination. Consequently, there is no prejudicial

---

**18.** This appointment was pursuant to *W.Va. Code*, 49-6-2 [1984], which provides, in part:

(a) In any proceeding under the provisions of this article, the child, his parents, his custodian or other persons standing in loco parentis to him, such persons other than the child being hereinafter referred to as other party or parties, shall have the right to be represented by counsel at every stage of the proceedings and shall be informed by the court of their right to be so represented and that if they cannot pay for the services of counsel, that counsel will be appointed. If the child or other parties have not retained counsel and

the child and other parties cannot pay for the services of counsel, *the court shall*, by order entered of record, at least ten days prior to the date set for hearing, *appoint an attorney* or attorneys to represent the child and other party or parties and so inform the parties. Under no circumstances may the same attorney represent both the child and the other party or parties; however, if more than one child from a family is involved in the proceeding, one attorney may represent all the children. The court may allow to each attorney so appointed a fee in the same amount which appointed counsel can receive in felony cases.

error in this regard.[19]

## IV

Finally, the appellant raises issues regarding selection of the jury in this case.

### A.

 The appellant contends that because two prospective jurors were excused earlier in the circuit court's term due to religious beliefs, the appellant was deprived of a "cross-section" of the community from which to select a jury. Specifically, during *voir dire* of another criminal case earlier in the term, these two prospective jurors indicated that they could not be impartial in a criminal trial due to religious beliefs and personal convictions.

*W. Va. Code*, 52–1–2 [1957] provided:

The judge of any court may, in his discretion, exempt or excuse any person from jury service when it appears that such service would be improper or work an undue hardship. The following persons shall be disqualified from serving on juries: Idiots, lunatics, paupers, vagabonds, habitual drunkards, and persons convicted of infamous crimes.[20]

The appellant contends that because this statutory provision, which was in effect during the appellant's trial, does not set forth religious beliefs as a reason for exemption, the circuit court erred by excluding the two prospective jurors who were excused earlier in the term due to religious beliefs. We do not agree with the appellant's contention.

The appellant's contention in this regard confuses systematic exclusion with individual exemption or excuse.

In syllabus point 2 of *State v. Hobbs*, 168 W.Va. 13, 282 S.E.2d 258 (1981), we held:

To establish a prima facie case of unconstitutional jury selection methods under the Sixth Amendment's fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

The appellant fails to show that the method of jury selection in this case was unconstitutional under *Hobbs*. Moreover, *W. Va. Code*, 52–1–2 [1957] merely set forth persons who "*shall* be disqualified from serving on juries[.]" (emphasis supplied) A plain reading of that statute reveals that exemptions or excuses from jury service may be granted by the trial judge for other

(emphasis supplied)

**19.** As for the appellant's claim that the assistant prosecutor improperly revealed client confidences while cross-examining her former client, B.K., during the State's rebuttal, the appellant fails to indicate the nature of the alleged confidential communications between the assistant prosecutor and B.K. The information exchanged between the assistant prosecutor and B.K. was nothing more than evidence brought out in open court during the trial as well as in the child abuse and neglect proceeding. Therefore, on the record before us, we do not find that the appellant was prejudiced.

At the time of the trial of this case, the *Code of Professional Responsibility* was in effect. Canon 4 of the *Code of Professional Responsibility* provided: "A lawyer should preserve the confidences and secrets of a client[.]" (The *Rules of Professional Conduct* have been in effect since January 1, 1989. Rule 1.6 pertains to client confidences.)

The issues in this case do not deal with whether the assistant prosecutor violated Canon 4 of the *Code of Professional Responsibility* or the ethical considerations and disciplinary rules pertaining thereto. We are not deciding in this case the propriety of the assistant prosecutor's representations under the *Code of Professional Responsibility*. Accordingly, we find no error.

**20.** *W. Va. Code*, 52–1–2 was rewritten in 1986 as part of the revision of the article on selection of petit juries, and now provides: "A citizen may not be excluded from jury service on account of race, color, *religion*, sex, national origin or economic status." (emphasis supplied)

*W. Va. Code*, 52–1–10 [1986] now provides: "No qualified prospective juror is exempt from jury service." *W. Va. Code*, 52–1–8 [1986] provides for various grounds for disqualification from serving on a jury. *W. Va. Code*, 52–1–11 [1986] authorizes a court to excuse a qualified prospective juror from jury service upon a showing of undue hardship, extreme inconvenience, or public necessity.

reasons, including if the jury service "would be improper or work an undue hardship" on a person.

### B.

The appellant also contends that the circuit court erred by refusing to remove two prospective jurors from the jury panel.

 One of these two prospective jurors was Margaret Jean Cogar, who eventually sat on the jury. Cogar had been employed by the Department of Human Services for about six months. The appellant contends that Cogar should have been removed for cause due to the "law enforcement role" of the Department of Human Services, which was involved in the related child abuse and neglect proceeding. This contention is meritless. "The Department of Human Services is neither a law enforcement agency nor a prosecutorial agency, ... and, therefore, the rule [of *per se* disqualification for cause due to employment by a law enforcement or prosecutorial agency] does not apply[.]" *State v. Bailey*, 179 W.Va. 1, 6 n. 7, 365 S.E.2d 46, 51 n. 7 (1987).

The appellant claims that another prospective juror, David Alltop, should have been removed for cause, due to his friendship with Trooper Morgan, a key witness for the State. Alltop did not sit on the jury in this case. Rather, he was removed by the exercise of a peremptory strike by the appellant.

In syllabus point 6 of *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983), we held:

> A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

(emphasis supplied)

In this case, individual *voir dire* was conducted with Alltop. "The decision as to whether to grant a defendant's motion to strike jurors for cause rests within the sound discretion of the trial court." *State v. Bennett*, 181 W.Va. 269, 271, 382 S.E.2d 322, 324 (1989).

We find no error by the circuit court in its ruling on either of these jurors.

### V

Based upon all of the foregoing, the judgment of the Circuit Court of Braxton County is affirmed.

Affirmed.