# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### August 12, 2003 Session

## STATE OF TENNESSEE v. BENTON WILLIAM PAMPLIN

### Appeal from the Circuit Court for Bedford County
### No. 14880      Lee Russell, Judge

---

### No.  M2002-00408-CCA-R3-CD - Filed December 23, 2003

---

The Appellant, Benton William Pamplin, was convicted by a Bedford County jury of simple assault and resisting arrest.  On appeal, Pamplin presents two issues for our review: (1) whether the trial court committed reversible error by refusing to strike, for cause, a prospective juror who was a uniformed deputy sheriff and whose office presented testimony at the trial, and (2) whether the evidence was sufficient to sustain the verdicts.  After review, we conclude that the trial court's refusal to strike the prospective juror constituted reversible error in that it denied Pamplin his right to a fair and impartial jury.  Accordingly, the judgments of conviction are reversed and the case is remanded for a new trial.

 **Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Remanded for New Trial.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P. J., and JERRY L. SMITH, J., joined.

Matt Q. Bastian, Columbia, Tennessee, on appeal, for the Appellant, Benton William Pamplin.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; William Michael McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

        The Appellant's actions, which resulted in his being indicted for assault and resisting arrest, arose from a partition suit.  The property to be partitioned was jointly owned by the Appellant's two sisters and consisted of a house and lot in Shelbyville.  Because the property was scheduled for sale, the Appellant and other family members had begun moving items of personal property from the

premises. On July 15, 2000, Shelbyville Police Officer Eric Ely, acting upon a complaint, appeared at the property address and advised all family members present that no one was to enter the residence. On Officer Ely's third visit to the property, he was advised by the cleaning crew that the Appellant and other family members had returned to the property and were carrying away various items. At this point, Officer Ely walked over to the Appellant's residence, which was nearby, and an argument quickly ensued between the two. Officer Ely ordered the Appellant to go inside his residence, when, according to Officer Ely, the Appellant "took a swipe at my face at that time, that was assault, and I went to place him under arrest. He resisted . . . ."

The trial began on October 9, 2001. During voir dire, the jury panel was informed that Bedford County Sheriff Clay Parker would appear before the jury and read into evidence a "stipulated statement/deposition" of Deputy Jimmy Parker, as the latter Parker was out of town. Deputy Parker, who was a captain with the Sheriff's Department, had responded to one of the calls at the residence and had assumed an active role in the case. After voir dire of the prospective jurors had concluded, defense counsel submitted three peremptory challenges in the first round. At a subsequent bench conference, defense counsel informed the court that he had mistakenly believed that he had five peremptory challenges. Upon being advised by the trial court that he had used all his peremptory challenges, defense counsel then challenged, for cause, prospective juror, Tony Barrett, a Bedford County Deputy Sheriff.[1]

Voir dire examination established that Juror Barrett was currently employed as a Bedford County Deputy Sheriff and had previously served as a judicial commissioner for eight years. Barrett acknowledged that he knew the Appellant and Officer Eric Ely. Barrett also acknowledged that his "sister-in-law works for the DA." Finally, in addition to Juror Barrett being a subordinate employee of a prosecuting witness, the record reflects that Barrett reported for jury duty in full deputy sheriff uniform, including badge and sidearm.

Notwithstanding the above facts, the trial court refused to strike Barrett for cause, finding that "both sides kept him" and that nothing precludes a law enforcement officer from serving on a jury. After the jury was sworn, Juror Barrett was elected foreman. Following the jury's verdicts, the Appellant received an eleven months, twenty-nine-day sentence for the assault and a six-month sentence for resisting arrest, with service of one hundred twenty days in the county jail.

---

[1]In this regard, the State argues that, because the Appellant failed to follow the proper selection procedures, he cannot now challenge the jurors' qualifications on appeal. The State contends that Rule 24(c),Tennessee Rules of Criminal Procedure, requires, "After prospective jurors have been passed for cause, counsel will submit simultaneously and in writing to the trial judge, the name of any juror in the group of the first twelve who have been seated that either counsel elects to challenge peremptorily." Because Juror Barrett was initially passed for cause in the first round, the State asserts that any future challenges for cause are foreclosed. We disagree. As is permitted with a peremptory challenge, we find nothing in the rule which would preclude a challenge for cause at any time prior to a full jury being selected and accepted by counsel. *Id.* Because the Appellant had exhausted all of his peremptory challenges and his challenge against Juror Barrett was denied, his claim that he was denied the right to trial before an impartial jury is not procedurally barred. *See State v. Kilburn*, 782 S.W.2d 199, 202 (Ten. Crim. App. 1989).

**ANALYSIS**

Both Article 1, Section 9 of the Tennessee Constitution and the Sixth Amendment to the United States Constitution guarantee an accused in a criminal prosecution the right to a trial by an impartial jury. Moreover, Tennessee Code Annotated Section 22-1-105 provides that:

> Disqualification by interest or relationship. - No person can act as a juror in any case in which the person is interested, or when either of the parties is connected with the person by affinity or consanguinity, within the sixth degree, computing by the civil law, except by consent of all the parties.

This provision has been interpreted to mean that every defendant is guaranteed "a trial by a jury free of a disqualification propter affectum; that is, a disqualification on account of some bias or partiality toward one side or the other of the litigation." *Toombs v. State*, 270 S.W.2d 649, 650 (Tenn. 1954). The process of voir dire allows not only the trial court but also the parties an opportunity to ensure that "jurors are competent, unbiased, and impartial." *State v. Howell*, 868 S.W.2d 238, 247 (Tenn. 1993). In particular, "[t]he right of challenge for cause was designed to exclude from the jury triers whose bias or prejudice rendered them unfit, and peremptory challenge was intended to exclude those suspected of bias or prejudice." *Manning v. State*, 292 S.W.2d 451, 455 (Tenn. 1927).

In assessing a juror's impartiality following a challenge for cause, the trial court should inquire "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 852 (1985); *see also State v. Harold W. Humphreys*, 70 S.W.3d 752, 765 (Tenn. Crim. App. 2001).

A determination of the qualifications of a juror rests within the discretion of the trial court and will not be overturned absent a showing of an abuse of that discretion. *State v. Kilburn*, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). Indeed, our supreme court has observed that a trial court's findings of impartiality may be overturned only for "manifest error." *Howell*, 868 S.W.2d at 248.

With regard to a prospective juror who is not otherwise disqualified to serve,[2] there are two situations where a challenge for cause should be sustained. The first is where the prospective juror indicates by his or her answer that they cannot or will not be a fair or impartial juror. The second is where, irrespective of the answers given on voir dire, the trial court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial, or situational, with any of the parties, counsel, victims, or witnesses. *See generally,* 47 AM JUR 2d, *Jury* § 266-94 (1995). As observed by the trial judge in

---

[2]Tennessee Code Annotated Section 22-3-102 provides that a prospective juror may be challenged for cause "who is incompetent to act as a juror under the provisions of chapter 1 of this act." Chapter 1 defines those persons who do not have the qualifications required by the statutes governing jury service. *See also* Tenn. R. Crim. P. 24(b).

this case, no Tennessee case or statute requires that a law enforcement officer be automatically excluded from a jury.[3] *See State v. Pender*, 687 S.W.2d 714, 718 (Tenn. Crim. App. 1984) (holding that the juror's status as a police officer, standing alone, did not lead to the conclusion that he was biased or prejudiced). However, Juror Barrett's professional relationship and interest in the case was entirely too close to that of Captain Parker and Officer Ely. Not only was Barrett a member of the same law enforcement agency as was Captain Parker, he was also a subordinate employee of Parker. Moreover, the nature of the case involved an assault upon a law enforcement officer. In addition, Juror Barrett was personally acquainted with Eric Ely, the prosecuting witness, who was a police officer and victim of the offenses. Finally, we note that the juror served on the jury as its foreman while in full uniform and with sidearm. With regard to this fact, we are constrained to hold that this practice should clearly be avoided, as the presence of a uniformed officer on the jury presents the appearance of authority and undermines the concept of impartiality. We are reminded that the jury selection process should endeavor to select jurors who are not only fair and impartial but are also free from the suspicion of impartiality.

## CONCLUSION

Based upon the foregoing, we conclude that manifest error exists and that the Appellant's challenge of Juror Barrett for cause should have been sustained. In view of our conclusion that the Appellant was denied his right to a fair and impartial jury, the judgments of conviction are reversed and this case is remanded for a new trial.

_____
DAVID G. HAYES, JUDGE

---

[3] This appears to be the majority rule. *See* 47 AM. JUR. 2D *Jury* § 176 (1995); s*ee also United States v. McCord*, 695 F.2d 823 (5th Cir. 1983); *Fordham v. State*, 513 So.2d 31(Ala. App. 1986); *State v. Hill*, 174 Ariz. 313 (Ariz. 1993); *State v. Ballard*, 747 So.2d 1077 (La. 1999); *State v. Matheny*, 860 S.W.2d 837 (Mo. Ct. App. 1993); *State v. Radi*, 578 P.2d 1169 (Mont. 1978); *State v. Ternes*, 259 N.W.2d 296 (N.D. 1977). However, some states strictly preclude law enforcement officers from serving on juries. *See State v. Cooper*, 353 S.E.2d 441 (S.C. 1986); *State v. King*, 396 S.E.2d 402 (W. Va. 1990). Other jurisdictions allow officers to serve but provide that they must or should be stricken for cause if an objection is made. *Hutcheson v. State*, 268 S.E.2d 643 (Ga. 1980); *State v. Reynolds*, 592 A.2d 194 (N.J. 1991).