518 S.E.2d 83

STATE of West Virginia, Plaintiff
Below, Appellee,

v.

Charles Barry GUTHRIE, Defendant
Below, Appellant.

No. 25790.

Supreme Court of Appeals of
West Virginia.

Submitted May 11, 1999.

Decided June 25, 1999.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Scott E. Johnson, Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

Gregory J. Campbell, Campbell & Turkaly, Charleston, West Virginia, Attorney for the Appellant.

DAVIS, Justice:

Charles B. Guthrie, appellant herein and defendant below, (hereinafter "Mr. Guthrie"), appeals his conviction of sexual assault of his spouse.[1] The Circuit Court of Kanawha County sentenced Mr. Guthrie to two to ten years' imprisonment in the State penitentiary. On appeal to this Court, Mr. Guthrie makes several assignments of error. Mr. Guthrie first argues that the trial court erred by granting the State's motion in limine to exclude the results of certain DNA testing. Additionally, Mr. Guthrie asserts that the trial court erred by admitting certain custodial statements. Finally, Mr. Guthrie argues that the State committed prosecutorial misconduct by seeking and obtaining an indictment with the felony offense of second degree sexual assault even though the parties were married at the time of the assault. For the reasons that follow, we affirm the conviction of Mr. Guthrie.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Guthrie, and the victim, Stephanie Guthrie (hereinafter "Mrs. Guthrie"), were married in 1991.[2] One child was born to the couple.[3] Mr. Guthrie was a self-employed brick mason. Mrs. Guthrie was not employed outside of the parties' home. The record shows that the couple had marital problems centered around household finances. Although the couple separated briefly as a result of financial problems, they subsequently reconciled.

On April 14, 1996, Mrs. Guthrie returned home from a week long visit with her father in Ohio.[4] The testimony at trial indicated that Mr. Guthrie started an argument with Mrs. Guthrie upon her return. The argument involved household finances, as well as Mr. Guthrie's belief that Mrs. Guthrie was being unfaithful to him. Mrs. Guthrie testified that Mr. Guthrie began beating her. Mr. Guthrie denied the allegations. Testimony by the couple's oldest child corroborated that Mrs. Guthrie was beaten by Mr. Guthrie. Additional testimony by Mrs. Guthrie indicated that Mr. Guthrie forced her to engage in sexual intercourse. While Mr. Guthrie denied having intercourse, the couples oldest child nevertheless testified to seeing Mr. Guthrie half-clothed and lying on top of Mrs. Guthrie.

Mr. Guthrie eventually left the home.[5] Mrs. Guthrie reported the beating and nonconsensual sexual intercourse to the local police. A warrant was issued for Mr. Guthrie's arrest. On April 15, 1996, Mr. Guthrie was arrested at his mother's home. Mr. Guthrie was informed that he was under arrest for sexual assault. The arresting officer, Trooper Michael Oglesby, testified that he did not read Mr. Guthrie his *Miranda* rights prior to transporting him to the South Charleston State Police Headquarters because he did not plan to interrogate Mr. Guthrie. Trooper Oglesby testified further

1. The conviction was under W. Va.Code § 61-8B-6 (1984) (Repl.Vol.1997), which states in applicable part:

   (b) A person is guilty of sexual assault of a spouse when such person engages in sexual penetration or sexual intrusion with his or her spouse without the consent of such spouse; and
   (i) The lack of consent results from forcible compulsion.

2. The couple is now divorced.

3. Mrs. Guthrie had another child prior to the marriage. After the marriage, Mr. Guthrie adopted this child.

4. The couple's children accompanied Mrs. Guthrie to Ohio.

5. Mr. Guthrie went to his mother's home.

that while en route to State Police Headquarters, Mr. Guthrie voluntarily stated that he had beaten Mrs. Guthrie and engaged in sexual intercourse with her.

Mr. Guthrie was eventually indicted by a grand jury on one count of second degree sexual assault and one count of sexual assault of a spouse. The trial was held on October 27 and 28, 1997. At the close of the State's evidence, the circuit court dismissed, *sua sponte*, the second degree sexual assault charge finding that the applicable statute defines that specific offense as involving persons not married to each other.[6] The jury returned a verdict of guilty against Mr. Guthrie as to Count II of the indictment, alleging sexual assault of a spouse. By order entered April 9, 1998, Mr. Guthrie was sentenced to an indeterminate term of imprisonment of not less than two, nor more than ten, years.

## II.

## STANDARD OF REVIEW

As numerous issues are raised in this appeal and each requires the application of a separate and distinct standard of review, we will incorporate such standards into our discussion of the issues to which they pertain.

## III.

## DISCUSSION

On appeal to this Court, Mr. Guthrie raises three primary assignments of error. First, Mr. Guthrie complains that the trial court erred by excluding DNA evidence obtained from the victim. Second, Mr. Guthrie contends that the lower court improperly admitted into evidence certain statements he made while he was being transported to police headquarters. Third, Mr. Guthrie claims that prosecutorial misconduct tainted his criminal trial. We will consider each of these assignments in turn.

### A. Exclusion Of DNA Evidence Obtained From The Victim

The first issue presented by Mr. Guthrie is whether the circuit court erred when it granted the State's motion *in limine* to exclude the results of deoxyribonucleic acid (DNA) testing. Mr. Guthrie sought to introduce DNA testing for the purpose of impeaching the victim. Concerning our standard of review of the circuit court's exclusion of the evidence at issue, we note that " '[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk,* 171 W.Va. 639, [*643*,] 301 S.E.2d 596, 599, (1983)." Syl. pt. 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983). However, "to the extent the circuit court's ruling turns on an interpretation of a *West Virginia Rules of Evidence,* our review is plenary." *State v. Quinn,* 200 W.Va. 432, 435, 490 S.E.2d 34, 37 (1997) (citing *State v. Sutphin,* 195 W.Va. 551, 560, 466 S.E.2d 402, 411 (1995)). With this standard in mind, we consider the DNA issue before us. Mr. Guthrie has made four arguments directly relating to the DNA issue concerning the (1) rape shield statute; (2) W. Va. R. Evid. 404; (3) W. Va. R.Evid. 612; and (4) his constitutional right to due process. We now proceed to analyze each argument separately.

**(1) Rape shield statute.** Mr. Guthrie sought to present evidence at trial that Mrs. Guthrie, pursuant to her examination at the hospital, informed medical personnel that the last time she engaged in sexual intercourse was approximately two months earlier. However, the test results proved her statement to be false. Specifically, spermatozoa was discovered on Mrs. Guthrie during her physical examination. The spermatozoa was compared with Mr. Guthrie's DNA, and the test comparisons revealed that the spermatozoa included a mixture of DNA from two or more individuals. These results further revealed that Mr. Guthrie was excluded as a contributor to the mixture. In its mo-

6. Sexual assault in the second degree is defined in W. Va.Code § 61–8B–4 (1991) (Repl.Vol. 1997). According to W. Va.Code § 61–8B–1(7) (1996) (Repl.Vol.1997) "[s]exual intercourse," as stated in W. Va.Code § 61–8B–4, "means any act *between persons not married to each other*[.]" (Emphasis added).

tion to exclude such evidence, the State argued that this evidence is prohibited by W. Va.Code § 61–8B–11 (1986) (Repl.Vol.1997), more commonly known as the rape shield statute. The circuit court granted the State's motion.[7]

■ Under the relevant provision of our rape shield statute, W. Va.Code § 61–8B–11(b) states:

> In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous conduct an issue in the trial by introducing evidence with respect thereto.

Consistent with this language, we hold, as a general matter, W. Va.Code § 61–8B–11(b) (1986) (Repl.Vol.1997) bars the introduction of evidence, in a sexual assault prosecution, concerning (1) specific instances of the victim's sexual conduct with persons other than the defendant, (2) opinion evidence of the victim's sexual conduct and (3) reputation evidence of the victim's sexual conduct. We agree with the State that the evidence at issue comes within the scope of our rape shield statute. This evidence constitutes "evidence of specific instances of the victim's sexual conduct with persons other than the defendant." W. Va.Code § 61–8B–11(b). Accordingly, such evidence was properly excluded from consideration at trial unless it is included in one of the enumerated exceptions to the rape shield law.

■ In keeping with this statutory language, we hold further that, W. Va.Code § 61–8B–11(b) (1986) (Repl.Vol.1997) provides an exception to the general exclusion of evidence of prior sexual conduct of a victim of sexual assault. Under the statute, evidence of (1) specific instances of the victim's sexual conduct with persons other than the defendant, (2) opinion evidence of the victim's sexual conduct and (3) reputation evidence of the victim's sexual conduct can be introduced solely for the purpose of impeaching the credibility of the victim only if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto. In the instant case, the record is clear. Mrs. Guthrie did not make her previous sexual conduct an issue at trial because she did not testify about her prior sexual conduct. Therefore, the evidence was properly excluded under W. Va.Code § 61–8B–11.

■ (2) **W.Va.R.Evid. 404.** Mr. Guthrie next contends that the circuit court should have admitted the DNA evidence pursuant to Rule 404(a)(3) of the West Virginia Rules of Evidence. Rule 404(a)(3) provides in relevant part:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:
>
> In a case charging criminal sexual misconduct, evidence of the victim's ... prior sexual conduct with persons other than the defendant [is admissible] where the court determines at a hearing out of the presence of the jury that such evidence is specifically related to the act or acts for which the defendant is charged and is necessary to prevent manifest injustice[.]

7. Prior to the trial, the State orally moved *in limine* to exclude the DNA results based on the rape shield statute. At that point, the circuit court excluded the evidence on this statutory basis but stated that the evidence may be used for impeachment purposes depending on Mrs. Guthrie's testimony. When the defendant sought to have the evidence admitted at trial during Mrs. Guthrie's testimony, the circuit court excluded the evidence and explained:

> In front of the jury there has been no evidence offered regarding [Mrs. Guthrie's state-

ment at the hospital that she last had sexual intercourse a couple of months ago], and so I don't think it's proper for impeachment.... This woman has also testified that to the best of her knowledge this man did not ejaculate during the course of intercourse. And, therefore, again identity is not an issue. And semen for the purpose of sexual assault, in my opinion, is not relevant. Therefore, I'm going to deny your request. Again, exclude that evidence and note an objection and exception for the defendant.

Rule 404(a)(3) incorporates the protection afforded by our rape shield statute. "[W]hen we adopted our Rules of Evidence we altered Rule 404 from the federal version to recognize our rape shield statute ... and conformed the Rule to the statute." *Gilman v. Choi*, 185 W.Va. 177, 187, 406 S.E.2d 200, 210 (1990) (Neely, J., concurring in part and dissenting in part). We have previously referred "to both the *statute and the rule*, considered *in pari materia*, as West Virginia's 'rape shield law.'" *State v. Quinn*, 200 W.Va. 432, 436, 490 S.E.2d 34, 38 (1997).

We hold, consistent with the language quoted above, that Rule 404(a)(3) of the West Virginia Rules of Evidence provides an express exception to the general exclusion of evidence coming within the scope of our rape shield statute. Rule 404(a)(3) provides for the admission of prior sexual conduct of a rape victim when the trial court determines *in camera* that the evidence is (1) specifically related to the act or acts for which the defendant is charged and (2) necessary to prevent manifest injustice. The evidence at issue fits neither of these criteria. Plainly, the evidence is not related to the act for which Mr. Guthrie was charged. The defendant was charged with sexual assault of his spouse. Mrs. Guthrie testified that the defendant sexually penetrated her without her consent and by force. Mr. Guthrie denied committing the crime. The only issue at trial, therefore, was whether Mr. Guthrie engaged in the charged conduct. Evidence that Mrs. Guthrie had had sexual intercourse prior to the charged offense with persons other than Mr. Guthrie is simply not related to whether Mr. Guthrie sexually assaulted his wife.[8] Further, because the evidence at issue was not related to the act with which Mr. Guthrie had been charged, its exclusion at trial could not result in manifest injustice to the defendant.

(3) **W.Va.R.Evid. 613.** Mr. Guthrie also argues that the DNA evidence should have been admitted as a prior inconsistent statement to impeach Mrs. Guthrie's credibility under Rule 613 of the West Virginia Rules of Evidence.[9] Rule 613 provides:

(a) *Examining witness concerning prior statement.*—In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) *Extrinsic evidence of prior inconsistent statement of witness.*—Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

According to Mr. Guthrie, the door was opened to such impeachment through testimony proffered by the State during trial, including Mrs. Guthrie's testimony that she had given her "history" to the doctors at the hospital and Dr. Skinner's testimony that she took Mrs. Guthrie's history and that the sexual assault examination performed on Mrs. Guthrie was "a routine type of thing." Mr. Guthrie also contends that the evidence should have been allowed as a result of the State's closing argument that Mrs. Guthrie had been truthful about the case to the police and hospital personnel.

This Court articulated the standard for admission of a prior inconsistent statement in Syllabus point 1 of *State v. Blake,*

---

8. We would reach a different result had Mr. Guthrie sought to introduce the DNA evidence, without more, as substantive exculpatory evidence of his innocence. However, the purpose for which Mr. Guthrie sought to use the DNA evidence was to inform the jury that, prior to the charged offense, Mrs. Guthrie had had sexual intercourse with other men and that she lied about this fact to hospital officials.

9. We have previously indicated that under Rule 613 "a statement may not be admitted as substantive evidence[.] The inconsistent statement only serves to raise doubts regarding the truthfulness of both statements of the witness." *State v. Blake*, 197 W.Va. 700, 706, 478 S.E.2d 550, 556 (1996) (citing *State v. Collins*, 186 W.Va. 1, 6, 409 S.E.2d 181, 186 (1990)).

197 W.Va. 700, 478 S.E.2d 550 (1996). *Blake* held:

> Three requirements must be satisfied before admission at trial of a prior inconsistent statement allegedly made by a witness: (1) The statement actually must be inconsistent, but there is no requirement that the statement be diametrically opposed; (2) if the statement comes in the form of extrinsic evidence as opposed to oral cross-examination of the witness to be impeached, the area of impeachment must pertain to a matter of sufficient relevancy and the explicit requirements of Rule 613(b) of the West Virginia Rules of Evidence—notice and an opportunity to explain or deny—must be met; and, finally, (3) the jury must be instructed that the evidence is admissible only to impeach the witness and not as evidence of a material fact.

*Id.* The problem with Mr. Guthrie's argument is that Mrs. Guthrie made no statements at trial with which the prior statement sought to be admitted is even remotely inconsistent. Despite this lack of pertinent testimony, Mr. Guthrie presents several examples of testimony at trial which, he alleges, opened the door to the admission of the evidence for impeachment purposes.

First, Mr. Guthrie points to Mrs. Guthrie's testimony that she gave her history to hospital personnel. Therefore, Mr. Guthrie argues, under Rule 613(a) he should have been allowed to introduce the alleged inconsistent statement made to the hospital personnel. The problem with this argument is that Mrs. Guthrie never testified at trial about any specific statement she gave to hospital personnel regarding her sexual activity a few months before the sexual assault by Mr. Guthrie. If Mrs. Guthrie had testified at trial that she informed hospital personnel that she was sexually active a few months before the sexual assault by Mr. Guthrie, this testimony would have constituted an inconsistent statement and the grounds would be for the introduction of evidence to challenge the inconsistency. However, there simply was never any such testimony by Mrs. Guthrie.

■ Second, Mr. Guthrie notes that Dr. Skinner testified that she took a history from Mrs. Guthrie. In fact, Dr. Skinner did not discuss any statement given by Mrs. Guthrie at the hospital which could be construed as inconsistent with Mrs. Guthrie's trial testimony. The extrinsic evidence provision of Rule 613(b)[10] simply cannot be invoked in this situation.[11] *See State v. Rodoussakis,* 204

---

**10.** We explained the meaning of extrinsic evidence under Rule 613(b) in *State v. King,* 183 W.Va. 440, 444, 396 S.E.2d 402, 406 (1990), by stating " '[e]xtrinsic evidence entails either calling a third party to testify to the existence and content of the prior inconsistent statement or presenting some documentary or recorded form of the statement. Rule 613(b) provides the requirements for extrinsic proof of a prior inconsistent statement.' " (Quoting Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers Sec. 4.2(B), at 159 (2d ed. 1986)).

**11.** We must also note a subtle procedural issue embedded in Mr. Guthrie's effort to argue that Rule 613(b) permitted him to impeach Mrs. Guthrie, through Dr. Skinner, under the extrinsic evidence provision of Rule 613(b). In our decision in *Blake* we indicated that under Rule 613(b), before extrinsic evidence can be used to impeach a witness, the witness must first be afforded notice and an opportunity to explain or deny the statement. 197 W.Va. 700, 478 S.E.2d 550. *See* Syl. pt. 8, *State v. Rodoussakis,* 204 W.Va. 58, 511 S.E.2d 469 (1998); Syl. Pt. 5, *State v. Carrico,* 189 W.Va. 40, 427 S.E.2d 474 (1993); Syl. pt. 10, *State v. James Edward S.,* 184

W.Va. 408, 400 S.E.2d 843 (1990); *State v. King,* 183 W.Va. 440, 444, 396 S.E.2d 402, 406 (1990); Syl. pt. 4, *State v. Schoolcraft,* 183 W.Va. 579, 396 S.E.2d 760 (1990). The rationale of *Blake* suggests another more fundamental procedural reason why Rule 613(b) could not be invoked while Dr. Skinner testified. Mrs. Guthrie was not first approached with the alleged inconsistent statement in order to explain or deny it. *Blake* and its progeny impose upon Rule 613(b) a restricted interpretation that some federal courts have moved away from. That is, some federal courts permit federal Rule 613(b), which is identical to our rule, to be invoked without the foundational requirement having first been satisfied. *See United States v. Moore,* 149 F.3d 773 (8th Cir.1998); *United States v. Young,* 86 F.3d 944 (9th Cir.1996); *United States v. McCall,* 85 F.3d 1193 (6th Cir.1996); *Wilmington Trust Co. v. Manufacturers Life Ins. Co.,* 749 F.2d 694 (11th Cir.1985); *United States v. Barrett,* 539 F.2d 244 (1st Cir.1976); *Complaint of Nautilus Motor Tanker Co., Ltd.,* 862 F.Supp. 1251 (D.N.J.1994). Rule 613(b) contains language which permits prior "notice and an opportunity to explain or deny" to be dispensed with if the trial judge determines "the interests of justice otherwise re-

W.Va. 58, 72, 511 S.E.2d 469, 483 (1998) ("Rule 613(b) provides for the admission of a . . . statement which is inconsistent with the witness' in court testimony.") (footnote omitted); *See also James v. Illinois*, 493 U.S. 307, 325 n. 1, 110 S.Ct. 648, 658 n. 1, 107 L.Ed.2d 676, *692* n. 1 (1990) (Kennedy, J., dissenting) ("Rule 613(b) contemplates the admission of extrinsic evidence of a 'prior inconsistent statement.' ").

■■■ Finally, Mr. Guthrie asserts that under Rule 613(b), Mrs. Guthrie's prior statement should have been admitted to impeach the State's claim in its closing argument that Mrs. Guthrie remained consistent in her testimony and had been truthful to police and hospital personnel.[12] Mr. Guthrie has cited no case, nor could we find any decision purporting to invoke Rule 613(b) as a result of the closing argument of counsel. Rule 613(b) has no application to closing arguments by counsel. To the extent Mr. Guthrie is contending that the State was informing the jury of something that was not introduced as evidence, the proper remedy was to object at trial during the State's closing argument and move for a curative instruction. *See State v. Lewis*, 133 W.Va. 584, *608*, 57 S.E.2d 513, 528 (1949) ("In order to take advantage of remarks considered improper they must be objected to and counsel must request the court to instruct the jury to disregard them." (citations omitted)).[13] Therefore, we find that none of Mr. Guthrie's Rule 613 arguments compel reversal.

■■ **(4) Constitutional Right to Due Process.** Finally, Mr. Guthrie contends that his constitutional "due process right to a fair trial has been violated by the trial court's exclusion of relevant evidence that went directly to the credibility of the victim."[14] We have previously held that our rape shield law does not, *per se*, violate the state or federal constitution.[15] In *State v. Green*, 163 W.Va. 681, 687, 260 S.E.2d 257, 261 (1979), we held our rape shield statute constitutional by stating that "[a] rape victim's previous sexual conduct with other persons has very little probative value about her consent to intercourse with a particular person at a particular time. That portion of the law which prohibits such evidence is constitutional." The constitutional issue resolved in *Green* involved the Confrontation Clause found in both the state and federal constitutions. We re-articulated *Green's* holding in Syllabus point 1 of *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982), wherein we held:

> In light of the judicially-sanctioned procedures set out in *State v. Green*, [163] W.Va. [681], 260 S.E.2d 257 (1979), the provisions of W. Va.Code, 61–8B–12, limiting the defendant's right to present evidence of the victim's prior sexual conduct are constitutional under the provisions of the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution.

■■ The constitutional challenge articulated in Mr. Guthrie's brief does not involve the Confrontation Clause.[16] Mr. Guthrie's

quire." In none of our previous cases involving Rule 613(b) have we ever discussed the significance of the phrase "the interests of justice otherwise require," contained in Rule 613(b) and the obvious discretion it gives trial judges to dispense with the foundational requirement of Rule 613(b).

**12.** "Great latitude is allowed counsel in argument of cases, but counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury, nor permit or encourage witnesses to make remarks which would have a tendency to inflame, prejudice or mislead the jury." Syl. pt. 2, *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978).

**13.** In reviewing the State's closing argument, we discovered no objection by defense counsel to any remarks made by the prosecutor.

**14.** In *State v. Small*, 693 So.2d 180, 190 (La.Ct. App. 2 Cir.1997), a defendant convicted of rape appealed limitations on his cross-examination of an expert regarding DNA found at the crime scene which did not match the defendant's DNA. The issue was raised, however, in the context of the right to confront one's accuser. The court in that case rejected the argument on the grounds that the defendant did, in fact, explore the issue.

**15.** "But the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis." *Sandoval v. Acevedo*, 996 F.2d 145, 149 (7th Cir.1993). (citations omitted).

**16.** Nothing in Mr. Guthrie's brief indicates a specific Confrontation Clause claim. We hasten to point out to the bar that constitutional arguments must be exact and thoroughly briefed.

argument is presented in terms of excluding "relevant" evidence in violation of the state and federal constitutional guarantee of a fair trial, as embodied in the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 3, § 14 of the West Virginia Constitution.[17] This Court observed in passing, in *Green,* 163 W.Va. at 690, 260 S.E.2d at 262, that "[i]n [*People v.*] *Blackburn,* [56 Cal.App.3d 685, 128 Cal.Rptr. 864 (1976)], a California Court of Appeal decided that a 'shield law' similar to ours did not 'deny to the defendant the due process rights of a fair trial[.]'" Also, in *State v. Stacy,* 179 W.Va. 686, 691, 371 S.E.2d 614, 619 (1988), we noted, without elaboration, that our rape shield law "may be required to yield if it conflicts with well-established due process constitutional rights." *Thomas v. State,* 301 Md. 294, 483 A.2d 6, 18 (1983) ("Of course, rape shield laws may not be used to exclude probative evidence in violation of a defendant's constitutional right[] of ... due process." (citation omitted)). *State v. Douglas,* 797 S.W.2d 532, 535 (Mo.Ct.App.1990) ("[T]he rape shield statute may not be applied so strictly as to deprive the defendant of the fair trial comprehended by the concept of due process."); *See State v. Sheline,* 955 S.W.2d 42, 45 (Tenn.1997) ("[R]ape shield laws recognize those circumstances in which the admission of such evidence, despite its potentially embarrassing nature, must be admitted to preserve an accused's right to a fair trial." (citation omitted)); *See also Rouse v. State,* 204 Ga.App. 845, 847, 420 S.E.2d 779, 781 (1992) (finding no due process violation in excluding evidence under rape shield law); *State v. Hart,* 112 Ohio App.3d 327, 331, 678 N.E.2d 952, 954 (1996) (concluding due process was not violated by excluding evidence under rape shield statute); *Com-*

*monwealth. v. Domaingue,* 397 Mass. 693, 700, 493 N.E.2d 841, 846 (1986) (determining defendant was not deprived of his constitutional right to a fair trial by exclusion of evidence under rape shield law). We must now fully examine the due process constitutional argument.

It has been correctly observed that

[t]he [rape] shield [statute] should be raised in a manner consistent with its purpose. That purpose is not to preclude relevant evidence. If it were, the statute could never conform with constitutional imperative under ... the fourteenth amendment's due process clause (U.S. Const., amend. XIV). The rape shield statute is expressly designed to yield to constitutional protections that assure fair trials with just outcomes.

*People v. Hill,* 289 Ill.App.3d 859, 862, 225 Ill.Dec. 244, 247, 683 N.E.2d 188, 191 (1997) (citations omitted). Without question, "[a] defendant has no [constitutional] right to confront a witness with irrelevant evidence." *In re Michael,* 119 Ohio App.3d 112, 119, 694 N.E.2d 538, 543 (1997) (citation omitted). *See Wood v. Alaska,* 957 F.2d 1544, 1549 (9th Cir.1992). However, states cannot arbitrarily deny a defendant the ability to proffer evidence that is " 'relevant and material, and ... vital to the defense.'" *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193, 1202 (1982) (quoting *Washington v. Texas,* 388 U.S. 14, 16, 87 S.Ct. 1920, 1922, 18 L.Ed.2d 1019, 1021 (1967)). *See State v. Jenkins,* 195 W.Va. 620, 627, 466 S.E.2d 471, 478 (1995) (" '[A] state may not impose arbitrary limits on the admissibility of evidence which would hamper the fact-finding process, without violating the [*Constitution of the United*

---

Different standards and tools of analysis are involved in constitutional claims, which makes it is imperative that briefs accurately pinpoint the constitutional basis of their arguments. In the instant proceeding, the constitutional test adopted by this Court for a Due Process Clause claim would be applicable to a Confrontation Clause claim had one been articulated by Mr. Guthrie.

**17.** This Court held as a general matter in Syllabus point 3 of *State v. Jenkins,* 195 W.Va. 620, 466 S.E.2d 471 (1995), that:

While ordinarily rulings on the admissibility of evidence are largely within the trial judge's sound discretion, a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right to examine witnesses against him or her, to offer testimony in support of his or her defense, and to be represented by counsel, which are essential for a fair trial pursuant to the due process clause found in the Fourteenth Amendment of the Constitution of the United States and article III, § 14 of the West Virginia Constitution.

*States*].' ") (quoting *State v. Beck*, 167 W.Va. 830, 840, 286 S.E.2d 234, 241 (1981)).[18]

██ Although "a trial judge cannot apply the [rape shield law] in such a mechanistic manner so as to exclude evidence which is critical to the defense," *Jenkins*, 195 W.Va. at 626, 466 S.E.2d at 477, in appropriate circumstances, the defendant's right to present relevant testimony may " ' "bow to· accommodate other legitimate interests in the criminal trial process." ' " *Michigan v. Lucas*, 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205, 212 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987)) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973)) (citation omitted) (footnote omitted). Ultimately, "each case must be weighed [to determine] the extent to which the rape shield would exclude evidence which is genuinely relevant[.]" *State v. Jenkins*,· 456 So.2d 174, 179 (La. Ct.App. 2 Cir.1984) (internal quotations and citation omitted).

The United States Supreme Court has ruled that legitimate state interests behind a rape shield statute, such as giving rape victims heightened protection against harassment, and unnecessary invasions of privacy, may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Lucas*, 500 U.S. at 150–152, 111 S.Ct. at 1746–48, 114 L.Ed.2d at 212–14. "Consequently, to determine whether a defendant was unconstitutionally denied his or her right to present relevant evidence, we must balance the importance of the evidence to the defense against the interests the state has in excluding the evidence." *Richmond v. Embry*, 122 F.3d 866, 872 (10th Cir.1997).

██ In summation, we hold that the test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is [19] (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion. *See Wood v. Alaska*, 957 F.2d 1544, 1550 (9th Cir. 1992).[20] As will be shown, by applying this

---

**18.** *See also Crane v. Kentucky*, 476 U.S. 683, 687, 106 S.Ct. 2142, 2145, 90 L.Ed.2d 636, 643 (1986) ("[A]n evidentiary ruling ... deprived [the defendant] of his fundamental constitutional right to a fair opportunity to present a defense." (citation omitted)). *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738, 741 (1979) ("Regardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case it's exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment."); *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 313 (1973) ("[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.").

**19.** This test is also applicable for a Confrontation Clause challenge.

**20.** We note that a slightly different federal test is used if a rape shield statute is challenged under the Compulsory Process Clause of the state and federal constitution. In that context, the test used to determine whether a trial court's exclusion of proffered evidence under a rape shield law violated the constitutional right to compulsory process refines a reviewing court to examine

(1) whether the testimony was relevant, and if so, (2) whether the state's interests in excluding the evidence outweighed the defendant's interests in its admittance, and (3) whether the excluded testimony was material, *i.e.*, whether it was of such an exculpatory nature that its exclusion affected the trial's outcome. *See Richmond v. Embry*, 122 F.3d at 872.

A general two-part test for determining the constitutionality of excluding evidence under a rape shield statute was formulated by the Supreme Court of Wisconsin. First, the defendant must establish his constitutional right to present the proposed evidence through a sufficient offer of proof. A sufficient offer of proof must meet five tests: (1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial effect. Second, if the defendant carries his burden under the first part of the test, the trial court must determine whether the defendants right to present the proffered evidence is nonetheless outweighed by the state's compelling interest to exclude the evidence. *State v. Dodson*, 219 Wis.2d 65, 72–73, 580 N.W.2d 181, 186

test to the facts of the instant case, we find no due process violation.

▬▬▬▬ (4)(i) **The relevance test.** Mr. Guthrie argues the evidence of DNA was relevant to impeach the credibility of Mrs. Guthrie, regarding her alleged false statement to hospital officials. *See Commonwealth. v. Houston*, 46 Mass.App.Ct. 378, 381, 706 N.E.2d 308, 310 (1999) ("[P]rior sexual conduct may be admissible for the purpose of establishing bias or motive to lie without running afoul of the rape shield statute"); *Commonwealth v. Allburn*, 721 A.2d 363, 366 (Pa.Super.1998) ("The Rape Shield Law may not be used to exclude relevant evidence showing a witness' bias or attacking credibility"). At best however, this evidence was only marginally relevant as impeachment evidence because there was no testimony regarding the alleged false statement Mrs. Guthrie made to hospital officials concerning prior sexual intercourse.[21] Rather, the true impact of the evidence was to prejudice the State by showing that Mrs. Guthrie had sexual intercourse with other men while she was married. *See State v. Cuni*, 303 N.J.Super. 584, 609, 697 A.2d 550, 563 (1997) ("The only substantial impact of presenting [the victim's] two previous sexual experiences would be to foster the impermissible inference that the Rape Shield Statute was intended to refute, namely, that an 'unchaste woman is more likely to consent to a sexual assault'" (citation omitted)). "A rape victim's previous sexual conduct with other persons has very little probative value about her consent to intercourse with a particular person at a particular time." *Green*, 163 W.Va. at 687, 260 S.E.2d at 261. *See Graydon v. State*, 329 Ark. 596, 601, 953 S.W.2d 45, 48 (1997) ("Prior acts of sexual conduct are not within themselves evidence of consent in a subsequent sexual act." (citation omitted)); *State v. Johnson*, 123 N.M. 640, 650, 944 P.2d 869, 879 (1997) ("[T]he fact-finder should deter-

mine the defendant's guilt or innocence based on the particular encounter for which the defendant was charged."). Moreover, "[t]o be 'constitutionally required,' other sexual activity evidence has to be more than simply relevant, it must be germane to the accused's right ... to present his theory of the case." *People v. Darby*, 302 Ill.App.3d 866, 874, 706 N.E.2d 1050, 1057, 236 Ill.Dec. 176, 183 (1999). In light of these authorities, we cannot conclude that the DNA testimony was so relevant as to require its admission during the underlying criminal proceedings.

▬▬▬▬ (4)(ii) **The State's interest.** We now turn to the State's interest. Whether a State may limit a defendant's right to present relevant evidence depends upon the competing weights of the interests of the State and the defendant. *See Wood v. Alaska*, 957 F.2d at 1551 ("Even though the evidence is relevant, it may properly be excluded if its probative value is outweighed by other legitimate interests."). In the case *sub judice*, the trial court relied on the rape shield statute in order to exclude the DNA evidence. The United States Supreme Court has held that rape shield statutes "represent[ ] a valid legislative determination that rape victims deserve heightened protection[.]" *Lucas*, 500 U.S. at 150, 111 S.Ct. at 1746, 114 L.Ed.2d at 212. Like rape shield statutes in other jurisdictions, this State's rape shield statute was enacted to protect the victims of sexual assault from humiliating and embarrassing public fishing expeditions into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders. *See State v. Babbs*, 334 Ark. 105, 107, 971 S.W.2d 774, 775 (1998); *State v. Cassidy*, 3 Conn.App. 374, 379, 489 A.2d 386, 389 (1985); *Colorado v. McKenna*, 196 Colo. 367, 371–72, 585 P.2d 275, 278 (1978); *Banks v. State*, 230

---

(1998). *See State v. Johnson*, 123 N.M. 640, 649, 944 P.2d 869, 878 (1997) (adopting Wisconsin's test). We decline to adopt Wisconsin's test under the facts of the case *sub judice*. However, under appropriate factual circumstances, Wisconsin's test may be a viable analytical tool for constitutional analysis of an evidentiary issue brought under our rape shield statute.

**21.** The United States Supreme Court has indicated that "trial judges retain wide latitude insofar as the [constitution] is concerned to impose reasonable limits on ... cross-examination ... that is ... only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986).

Ga.App. 258, 263, 495 S.E.2d 877, 882 (1998); *Hook v. State,* 705 N.E.2d 219, 221 (Ind.App. 1999); *People v. Adair,* 452 Mich. 473, 480, 550 N.W.2d 505, 509 (1996); *State v. MacKinnon,* 957 P.2d 23, 30 (Mont.1998); *Johnson v. State,* 113 Nev. 772, 942 P.2d 167, 170 (1997); *Commonwealth v. Allburn,* 721 A.2d 363, 366 (Pa.Super.1998).

Without question, the evidence Mr. Guthrie sought to introduce is certainly of the kind our rape shield statute was enacted to exclude. Allowing Mr. Guthrie to inform the jury, under the ruse of impeachment evidence, that Mrs. Guthrie had sexual intercourse with at least two men at some point prior to the incident charged against him, would have been highly inflammatory, embarrassing and prejudicial to the victim and the State. Undoubtedly, if this Court sanctioned the admission of such evidence as presented under the facts of this case, future victims may be deterred from reporting spousal sexual assaults. The State had an unquestioned interest in protecting both the prosecution and the victim from admission of such marginally relevant evidence.

> In sum, on one side of our scale rest the state's interests in protecting sexual assault victims and in encouraging such victims to cooperate with the prosecution—interests that are both legitimate and important. On the other side of the scale rests the defendant's interest in admitting testimony that is, at best, only marginally relevant ... Consequently, we hold the balance of interests in this case weigh heavily in favor of the state and, therefore, in favor of the [evidence's] exclusion.

*Richmond v. Embry,* 122 F.3d at 874.

### B. Admission Of Statements Made To The Police

The next assignment of error made by Mr. Guthrie is that the trial court committed error by admitting into evidence statements that he made to the police while being transported to police headquarters. We have held that "[a] trial court's decision

---

**22.** In *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), the United States Supreme Court held,

regarding the voluntariness of a confession [or statements] will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. pt. 3, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978). This Court expounded more precisely the standard of review applicable to the instant appeal in Syllabus point 3 of *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994):

> On appeal, legal conclusions made with regard to suppression determinations are reviewed de novo. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference.

Moreover, "[t]his Court is constitutionally obligated to give plenary, independent, and de novo review to the ultimate question of whether a particular confession [or statement] is voluntary and whether the lower court applied the correct legal standard in making its determination." Syl. pt. 2, in part, *State v. Farley,* 192 W.Va. 247, 452 S.E.2d 50 (1994). Finally, "[t]he State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." Syl. pt. 5, *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975).

There is no disagreement between the parties that Mr. Guthrie made incriminating statements to the police while he was being transported to police headquarters. Mr. Guthrie stated the following while being transported: "Yeah, I smacked the h- - - out of her," and "yeah, we had sex, but this is bull- - - -." These statements were given as evidence through the officer who was transporting Mr. Guthrie. The State does not contest that when Mr. Guthrie made these statements, *Miranda* warnings had not been given to him.[22] It is the State's position that

regarding custodial interrogation of a suspect by law enforcement officers, that:

> Prior to any questioning the person must be warned that he has a right to remain silent,

*Miranda* warnings were not necessary because the arresting officer did not intend to, nor did he, interrogate Mr. Guthrie during the drive to police headquarters.[23] The trial court also ruled that the "statements were not pursuant to any custodial interrogation, that *Miranda* was not required at that point and that those statements are, in fact, admissible." Mr. Guthrie contends that this Court's prior precedent requires *Miranda* warnings whenever a suspect is arrested, even if interrogation does not occur. He relies upon our holding in Syllabus point 1 of *State v. Preece*, 181 W.Va. 633, 383 S.E.2d 815 (1989), wherein we held that *"Miranda* warnings are required whenever a suspect has been formally arrested or subjected to custodial interrogation, regardless of the nature or severity of the offense." The State invites this Court to disapprove the language in *Preece* indicating *Miranda* warnings are necessary upon the arrest of a suspect. For the reasons set forth below, we shall revisit *Preece*.

To begin, we note that the decision in *Preece* did not require this Court to address the issue of whether *Miranda* warnings are required upon the mere arrest of a suspect. The defendant in *Preece* was convicted and sentenced for causing a homicide while driving under the influence of alcohol. The facts of *Preece* show that when the police arrived at the accident scene, the defendant was inside of an ambulance. The police approached the defendant and asked him what happened. Defendant Preece responded that he was driving the car and that he had

been drinking. The defendant later changed his story and said that he was not the driving the car. "Prior to trial the [defendant] moved to suppress the statements he made in the ambulance because the deputy did not provide [him] with *Miranda* warnings before questioning him." *Preece*, 181 W.Va. at 636, 383 S.E.2d at 818. On appeal of the defendant's conviction and sentence, this Court was asked to determine "whether a police officer who is investigating a traffic incident is required to provide *Miranda* warnings to persons at the scene of the investigation prior to questioning them." *Preece*, 181 W.Va. at 635, 383 S.E.2d at 816.

One of the significant points to understand about our analysis in *Preece* is that the question of "interrogation" was not an issue. The opinion conceded, without discussion, that the police interrogated the defendant while he was in the ambulance. The controlling fact in *Preece* was whether or not "custody" had occurred at the point of interrogation. This Court ultimately determined that the defendant was not in custody when the interrogation occurred. We crystallized this finding in Syllabus point 2 of *Preece*, wherein it was said that "[w]hen ruling upon a motion to suppress a statement made by a suspect pursuant to a traffic investigation due to the investigating officer's failure to provide *Miranda* warnings, the trial court must determine whether the statement was the result of custodial interrogation." We proceeded to affirm the conviction and sentence in *Preece*.

Rather than staying within the narrow confines of the issue actually presented in

that any statement he does make may be used as evidence against him, and that he has a right of the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

This Court's first articulation of the *Miranda* principles was made in Syllabus point 7 of *State v. Plantz*, 155 W.Va. 24, 180 S.E.2d 614 (1971):

A statement freely and voluntarily made by an accused while in custody or deprived of his freedom by the authorities and subjected to

questioning is admissible in evidence against him if it clearly appears that such statement was freely and voluntarily made after the accused had been advised of his constitutional right to remain silent and that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney and if he can not afford an attorney one will be appointed for him, and that, after he has been so advised, he knowingly and intelligently waives such rights.

**23.** The arresting officer testified that Mr. Guthrie started talking, without any prompting, the moment he was placed in the car. There was no evidence to indicate coercive tactics or trickery by the police that caused Mr. Guthrie to start speaking.

*Preece,* this Court ventured beyond the factual setting of the case and articulated unsupportable language to the effect "that *Miranda* warnings are required whenever a suspect has been formally arrested[.]" *Preece,* 181 W.Va. at 641, 383 S.E.2d at 823. No decision by the United States Supreme Court or any federal court has ever held that *Miranda* warnings are required merely upon the arrest of a suspect. In fact, in the decision of *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (1980), the United States Supreme Court expressly ruled "that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."

Justice Cleckley, writing for a unanimous Court in *State v. Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995), touched upon resolution of the very issues now confronting this Court. In *Bradshaw,* the defendant appealed convictions and sentences for two homicides. One of the issues addressed in that case was whether *Miranda* rights could be invoked by the defendant as he was being interrogated, but before he was actually taken into custody. In responding to the issue presented in *Bradshaw,* Justice Cleckley stated:

> To the extent that any of our prior cases could be read to allow a defendant to invoke his *Miranda* rights outside the context of custodial interrogation, the decisions are no longer of precedential value.

As the Supreme Court recognized in *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307 (1980), "[i]t is clear … the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." We believe the same reasoning applies where a defendant is being interrogated, but he is not in custody. The "inherent compulsion" that is brought about by the combination of custody and interrogation is crucial for the attachment of *Miranda* rights.

*Bradshaw,* 193 W.Va. at 530, 457 S.E.2d at 467 (citation omitted). *See State v. George,* 185 W.Va. 539, 545, 408 S.E.2d 291, 297 (1991) ("[T]he ultimate inquiry which must be resolved by the trial court when ruling on a motion to suppress statements due to an officer's failure to give *Miranda* warnings is 'whether the statement was the result of custodial interrogation.'") (quoting, Syl. pt. 2, in part, *State v. Preece,* 181 W.Va. 633, 383 S.E.2d 815).

▆ While the issue was not directly before this Court in *Bradshaw,* we nevertheless recognized that the United States Supreme Court has not extended *Miranda* warnings to those who are simply in custody. In fact, our research has uncovered not one state court decision imposing *Miranda* upon mere custody.[24] Therefore, we hold that the spe-

---

24. The following jurisdictions addressing the issue have held that *Miranda* warnings are necessary only where a suspect is the subject of custody *and* interrogation. *Cowles v. State,* 961 P.2d 438 (Alaska Ct.App.1998); *State v. Smith,* 715 So.2d 925 (Ala.Crim.App.1998); *Godbold v. State,* 336 Ark. 251, 983 S.W.2d 939 (1999); *People v. Aguilera,* 51 Cal.App.4th 1151, 59 Cal. Rptr.2d 587 (1996); *People v. Trujillo,* 938 P.2d 117 (Colo.1997); *State v. Beliveau,* 52 Conn.App. 475, 727 A.2d 737 (1999); *Haynes v. State,* 729 So.2d 498 (Fla.App. 1 Dist.1999); *Turner v. State,* 233 Ga.App. 413, 504 S.E.2d 229 (1998); *State v. Kauhi,* 86 Hawai'i 195, 948 P.2d 1036 (1997); *State v. Ninci,* 262 Kan. 21, 936 P.2d 1364(1997); *Wells v. Commonwealth.,* 892 S.W.2d 299 (Ky. 1995); *State v. Benefiel,* 131 Idaho 226, 953 P.2d 976 (1998); *State v. Linck,* 708 N.E.2d 60 (Ind. App.1999); *State v. Hammond,* 706 So.2d 530 (La.App. 4 Cir.1997); *People v. Wheeler,* 281 Ill. App.3d 447, 217 Ill.Dec. 365, 667 N.E.2d 158

(1996); *State v. Countryman,* 572 N.W.2d 553 (Iowa 1997); *Commonwealth v. Larkin,* 429 Mass. 426, 708 N.E.2d 674 (1999); *State v. Michaud,* 724 A.2d 1222 (Me.1998); *State v. Woods,* 283 Mont. 359, 942 P.2d 88 (1997); *McGrier v. State,* 125 Md.App. 759, 726 A.2d 894 (1999); *People v. Marsack,* 231 Mich.App. 364, 586 N.W.2d 234 (1998); *State v. Tibiatowski,* 590 N.W.2d 305 (Minn.1999); *State v. McNeill,* 349 N.C. 634, 509 S.E.2d 415 (1998); *State v. Copeland,* 928 S.W.2d 828 (Mo.1996); *State v. Graca,* 142 N.H. 670, 708 A.2d 393 (1998); *State v. Pearson,* 318 N.J.Super. 123, 723 A.2d 84 (1999); *State·v. Conley,* 574 N.W.2d 569 (N.D.1998); *State v. Veiman,* 249 Neb. 875, 546 N.W.2d 785 (1996); *State v. Mason,* 82 Ohio St.3d 144, 694 N.E.2d 932 (1998); *State v. Juarez,* 120 N.M. 499, 903 P.2d 241 (1995); *Commonwealth v. Johnson,* 727 A.2d 1089 (Pa.1999); *State v. Walker,* 667 A.2d 1242 (R.I.1995); *State v. Kerr,* 330 S.C. 132, 498 S.E.2d 212 (1998); *State v. Goode,*

cial safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation. To the extent that language in *State v. Preece*, 181 W.Va. 633, 383 S.E.2d 815 (1989), and its progeny, may be read to hold differently, such language is expressly overruled.

In the instant proceeding, the record is clear that Mr. Guthrie was not interrogated by the police while he was being driven to police headquarters. Nothing in the record suggests any subtle or overt coercive tactic being used by the police for the purpose of intimidating Mr. Guthrie into talking and incriminating himself. Therefore, the police did not have to inform him of his *Miranda* rights while driving him to police headquarters.[25]

956 S.W.2d 521 (Tenn.Crim.App.1997); *Brown v. State*, 960 S.W.2d 265 (Tex.App.–Corpus Christi 1997); *State v. Brandley*, 972 P.2d 78 (Utah App. 1998); *Timbers v. Commonwealth*, 28 Va.App. 187, 503 S.E.2d 233 (1998); *State v. FitzGerald*, 165 Vt. 343, 683 A.2d 10 (1996); *State v. Armstrong*, 223 Wis.2d 331, 588 N.W.2d 606 (1999); *Martinez v. State*, 943 P.2d 1178 (Wyo.1997).

25. We do not view the principle of law articulated in this decision as totally new law. Our holding simply clarifies an existing principle of federal law. The decision previously reached by this Court in *Bradshaw* clearly foreshadowed and gave notice that *Preece* misstated the law with respect to when *Miranda* warnings are required. Therefore, we may apply our holding herein to the instant proceeding. "[A] judicial decision in a criminal case is to be given prospective application only if: (a) It established a new principle of law; (b) its retroactive application would retard its operation; and (c) its retroactive application would produce inequitable results." Syl. pt. 5, in part, *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996). *See also* Syl. pt. 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) ("In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where,

*C. Prosecutorial Misconduct*

In Mr. Guthrie's final assignment of error, he contends that the prosecutor engaged in misconduct[26] in charging him with second degree sexual assault under W. Va.Code § 61–8B–4 (1991) (Repl.Vol.1997). That issue was not properly preserved[27] at the trial court level.[28] We have held that, [a]s a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.

Syl. pt. 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). See also Syl. pt. 4,

on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.").

26. We note that Mr. Guthrie styles this assignment of error as "prosecutorial misconduct," when the substance of his argument is actually an attack on the indictment itself. Regardless of the legal sophistry used by Mr. Guthrie, he cannot circumvent the raise or waive rule applicable to this issue.

27. Mr. Gregory Campbell, who represents Mr. Guthrie on appeal, was not Mr. Guthrie's trial counsel.

28. We point out that the State has actually briefed this assignment of error and asked this Court to apply the harmless error rule to the issue. In Syllabus point 3 of *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998), we held that

[w]hen a defendant assigns an error in a criminal case for the first time on direct appeal, the state does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, this Court may, in its discretion, review the merits of the assignment of error.

In the instant proceeding, we decline to exercise our discretion to address the merits of this issue.

*State v. Browning,* 199 W.Va. 417, 485 S.E.2d 1 (1997) ("This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record."); *State v. Grimmer,* 162 W.Va. 588, 595, 251 S.E.2d 780, 785 (1979) ("When there is an opportunity to speak, silence may operate as a waiver of objections to error and irregularities at the trial which, if seasonably made and presented, might have been regarded as prejudicial"). The raise or waive rule was explained in *Wimer v. Hinkle,* 180 W.Va. 660, 663, 379 S.E.2d 383, 386 (1989), as part of a design "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." Additionally, we noted in *State v. LaRock,* 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996), that the raise or waive rule seeks to "prevent[ ] a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result)."

Mr. Guthrie's argument is that under the second degree sexual assault statute, the victim cannot be married to the assailant. He argues that the State knew that he was married to Mrs. Guthrie before he was charged with this offense in the two count indictment. Further, Mr. Guthrie contends that he was prejudiced by the second degree sexual assault charge because the jury was aware that such a charge had been made against him. The fundamental problem with this issue is that the record does not disclose any pretrial motion or objection by Mr. Guthrie to that portion of the indictment containing the contested charge. In fact, the post-trial order in this case clearly establishes that count one, the count challenged by Mr. Guthrie herein, was dismissed.

> The Court, after hearing argument of counsel, both for the State and the defendant, DENIED the defendant's motion for a directed verdict as it related to Count Two (sexual assault of a spouse) of the indictment. However, the Court on its own motion ruled that Count One (second degree sexual assault) was not an appro-

priate charge in this case, whereupon that Count was dismissed.

The trial court *sua sponte* dismissed the second degree sexual assault charge. This charge was not dismissed because of any affirmative conduct by Mr. Guthrie. The time to challenge the State's conduct was before the trial court in the first instance, not on appeal. Had Mr. Guthrie made a timely objection to the charge, a record of the State's motive and knowledge could have been made for this Court to review. To the extent that any prejudice resulted to Mr. Guthrie because the jury knew the second degree sexual assault charge had been made, Mr. Guthrie invited such prejudice by failing to challenge the charge in a pretrial motion to dismiss.

### IV.

### CONCLUSION

In view of the foregoing, the conviction and sentence in this case are affirmed.

Affirmed.