FILED

**June 16, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 15-0037 – *State of West Virginia v. Nicholas Varlas*

Benjamin, Justice, concurring in part and dissenting in part:

I agree that Varlas's conviction must be reversed and the case remanded for a new trial and, therefore, largely concur with the majority opinion. However, I disagree with the majority opinion insofar as it declares that *none* of the twenty-nine text messages at issue have anything to do with N.S.'s sexual history and are thus beyond the scope of Rule 412. Portions of four text messages and the entirety of a fifth should be excluded pursuant to Rule 412 because a jury might reasonably infer prior sexual history of N.S. from such text language and the exclusion of such text language creates no prejudice to the defense which Varlas seeks to advance.

Rule 412 provides "the standard for the introduction of evidence of a victim's sexual history," and it "supersedes the rape shield statute, W. Va. Code § 61-8B-11, to the extent that the statute is in conflict with the rule." W. Va. R. Evid. 412 cmt. Rule 412 serves the very important purpose of protecting victims of sexual violence from further victimization in the courtroom while balancing the due process rights of defendants. It excludes "evidence offered to prove that a victim engaged in other sexual behavior," W. Va. R. Evid. 412(a)(1), thus protecting victims from "the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the

1

factfinding process." *Id.*; *see State v. Guthrie*, 205 W. Va. 326, 339, 518 S.E.2d 83, 96 (1999) (observing that rape shield law is designed "to protect the victims of sexual assault from humiliating and embarrassing public fishing expeditions into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders"). The rule ensures that juries hear a legitimate defense, rather than a defense of distraction. It also ensures that the judicial system is not misused to further exploit, harass, or intimidate a victim.

The majority opinion professes that, as a matter of law, "Shepard's statements in those text messages do relate to sexual conduct, but between N.S. and defendant Varlas." *Ante*, at 15. The majority opinion's error lies in its failure to recognize that a reasonable juror can likewise read the italicized portions below to relate to a prior sexual history between N.S. and others:

> [6:59]: You need to press charges [N]. [I]t pissed me off more than anything that someone [expletive] you tonight, *all I asked was no other guys*, then I find out you went along with him to watch a movie? Wtf.
>
> [7:34]: *I told you, have sex with anyone else. I'm gone.*
>
> [7:44]: *I told you before you [expletive] went, no other boys, or I'm gone,* you say you got raped but won't file charges, seems like you're hiding something and trying to keep me from not getting mad. [B]ut until you press charges, I'm done. Bye.

2

[7:48]: *It was such a simple [expletive] request, no other boys, or I'm gone*, you say you got raped but won't file charges, seems like you're hiding something and trying to keep me from not getting mad. [B]ut until you press charges, I'm done. Bye.

[7:56]: *Good job at whoring around. This just shows me how you really are.* If it was rape, you would [have] already called the cops.

(emphasis added).

According to the majority, each foregoing message necessarily pertains solely to N.S.'s sexual conduct with Varlas in the immediate past. The messages, however, refer in the plural to other "guys," "boys," and, indeed, *anyone* else whomsoever. Shepard did not testify in the proceedings below, and there is no guarantee that he will testify at any retrial. Absent his testimony that his messages referred specifically to Varlas, a reasonable juror could certainly infer that the essence of Shepard's messages was this:

I have forgiven your past infidelities that have breached our commitment to a monogamous relationship. Have sex with anyone else, apart from those you've already cheated with, and I'm gone. All I asked was no other, additional guys. I told you before you went, no other, additional boys. Your indiscretions, the last of which occurred tonight, just show me how you really are. Good job at whoring around.

Viewed in such a light, there is no question that the emphasized portions of the messages could be considered by a reasonable juror to relate to past sexual conduct on the part of N.S. I would therefore exclude those italicized portions of the text messages pursuant to

3

Rule 412, while permitting the remainder of the messages to be admitted as having legitimate evidentiary value. *Cf. State v. Marenkovic*, No. 11-1764, 2013 WL 1501426, at *3 (W. Va. Apr. 12, 2013) (memorandum decision) (transcript of online conversation redacted by trial court to omit victim's statement that sexual encounter with defendant was "kind of her first time" did not open the door for defendant to introduce evidence of victim's prior sexual conduct).[*]

The majority's decision authorizes the admission of all twenty-nine text messages in their entirety, out of a legitimate concern that their mass exclusion rendered the entire trial unfair. I do not disagree that Varlas was deprived of a fair trial by virtue of such a significant amount of probative evidence being withheld from the jury. The excision of a mere sliver of that evidence, however, would serve the important purposes of Rule 412 while not affecting Varlas's substantial rights to any appreciable degree. Here, the potential prejudice of inclusion is significant and the potential prejudice of exclusion is negligible. The relevant language should be excluded.

---

[*] Though the content of the second objectionable text message, at 7:34, should be wholly redacted, that any message was sent at all might nonetheless be of importance to the jury. I would thus permit indication of the time stamp, with nothing more, to demonstrate that an unknown message had been sent, such being consistent with the defense theory that the sheer number of texts, from their substance, incrementally increased the pressure on N.S. to report the incident. Thus, only the message itself, not the existence of the text, should be properly subject to redaction.

Except for the conclusion to permit the introduction of the italicized language above, I agree with the remainder of the majority opinion. I, therefore, respectfully concur in part and dissent in part from the majority opinion.