STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-0727** (Harrison County 12-F-173)

**Michael C.,**
**Defendant Below, Petitioner**

**FILED**

June 12, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**MEMORANDUM DECISION**

Petitioner Michael C.,[1] by counsel Daniel C. Cooper and Landon S. Moyer, appeals the order of the Circuit Court of Harrison County, entered June 19, 2014, denying his motion for judgment of acquittal or, alternatively, a new trial, and confirming petitioner's conviction of five counts of incest, five counts of sexual assault in the first degree, and six counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust. Respondent State of West Virginia appears by counsel Derek A. Knopp.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

The grand jury returned an indictment in the September of 2012 term of court for the Circuit Court of Harrison County charging petitioner with six counts of incest; seven counts of sexual assault in the first degree; and eight counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust. The charges involved petitioner's stepdaughters, M.H., then fourteen years old, and R.M., then ten years old.

Prior to trial, the State filed a motion in limine pursuant to West Virginia Code § 61-8B-11(a) to preclude evidence of the victims' prior sexual conduct. The State asserted that M.H. was

---

[1] Because of the sensitive nature of the facts alleged in this case, we use the initials of the affected parties. *See State v. Edward Charles L.*, 183 W. Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n. 1 (1990)("Consistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victim . . . [is] related to the appellant, we have referred to the appellant by his last name initial." (citations omitted)).

1

pregnant and petitioner possibly was the father. In response, petitioner argued that he was not the father of M.H.'s child, and the pregnancy was M.H.'s motivation for accusing him of sexual misconduct. He also argued that R.M. was sexually abused by her biological father. The circuit court granted the State's motion as to R.M., stating that petitioner had offered no evidence that R.M. had been abused by her father, and deferred ruling on the issues related to M.H. The circuit court conducted an in camera hearing on the State's motion as it pertained to M.H. on the second day of trial. At the conclusion of the evidence presented on that motion, the circuit court granted the motion as to M.H., stating that the evidence did not support the motive suggested by petitioner. Petitioner was prohibited from presenting evidence of M.H.'s pregnancy or any prior sexual relationship.

A three-day trial was conducted in November of 2013. The evidence included testimony from each victim. R.M. testified that petitioner had sex with her. She described the act, "He got on top of me. . . . Going up and down." She further testified, "He will put his d--- in my mouth, and then I have to put my hands on it." R.M. explained that these things happened "a lot" but she could not count the occurrences. R.M. said petitioner abused her in his bedroom, when her mother was away from home and her brother and sister were outside. R.M. testified that she told her mother's friend Kathleen Newbrough about the abuse because she wanted the abuse to stop.

M.H. testified that petitioner began abusing her when she was about ten years old. She testified that he put his penis in her vagina, put his fingers in her vagina, placed his penis in her hands and made her stimulate him to ejaculation, and put his penis in her mouth while moving her head back and forth. Most of the occurrences took place in petitioner's bedroom while M.H.'s mother was away. M.H. testified that she told her aunt about the abuse in 2009, and her aunt told her to tell her mother. M.H. testified that she did so, and her mother responded that "it didn't happen." M.H. then told her grandmother, who reported M.H.'s allegation to the police. M.H.'s mother took her to the police station, but told her to tell the police the truth, that petitioner "didn't do it." M.H. testified that she gave a statement at that time, but could not recall anything about the statement. Soon after, according to M.H., petitioner went to Colorado. M.H. did not remember how long he stayed in Colorado, but she said he returned with her permission: "I told them that if he didn't touch me and my sister he could come back." When he returned, the abuse resumed and continued until the children were taken from the home.

Five counts of the indictment were dismissed after petitioner moved for judgment of acquittal subsequent to the State's presentation of its case, because there was no evidence of penetration involving R.M. Petitioner ultimately was found guilty of five counts of incest, five counts of first-degree sexual assault, and six counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust. Petitioner filed a motion for a new trial, and the motion was denied. This appeal followed.

II.

On appeal, petitioner asserts six assignments of error: that (1) he was prejudiced by prosecutorial misconduct occurring in the State's closing statement; (2) our state's "rape shield law," found at West Virginia Code § 61-8B-11(b), is invalid because it conflicts with the former Rule 404(a)(3) of the West Virginia Rules of Evidence; (3) the circuit court erred in excluding

evidence of the prior sexual histories of M.H. and R.M.; (4) his Sixth Amendment right to a speedy trial was violated when the circuit court forced him to choose between requesting a continuance of his trial date or hiring a particular expert witness; (5) the circuit court allowed hearsay testimony that bolstered the testimony of M.H. and R.M.; and (6) the cumulative effect of numerous errors prevented him from receiving a fair trial.

Because this matter is on appeal from the circuit court's order denying petitioner's motion for a new trial, we employ the following standard of review:

> "'Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997).

Syl. Pt. 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000). Additionally, we generally review findings and rulings made by a trial court as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000); *see also Tennant v. Marion Health Care Found.*, 194 W.Va. 97, 459 S.E.2d 374 (1995).

III.

We begin with petitioner's first assignment of error, in which he asserts that he was prejudiced by improper remarks made by the assistant prosecuting attorney during her closing statement. Specifically, petitioner argues that the State unfairly explained the dismissal of the five counts of the indictment involving R.M. by claiming that petitioner did, in fact, penetrate R.M., but that R.M. "didn't want to talk about it." The State's attorney explained, "The mere fact she doesn't want to tell you, that's on me, ladies and gentlemen, not on her. It's okay if she doesn't want to tell you." Petitioner objected to the State's characterization of events, and the circuit court sustained the objection.

With respect to a claim for prosecutorial misconduct, we have repeatedly stated that "[a] judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. Pt. 5, *State v. Sparks*, 171 W. Va. 320, 298 S.E.2d 857 (1982), quoting Syl. Pt. 5, *State v.*

*Ocheltree*, 170 W. Va. 68, 289 S.E.2d 742 (1982). We recently provided the following guidance for consideration of such a claim:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. Syllabus Point 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

Syl. Pt. 8, *State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 700 S.E.2d 489 (2010). Applying these considerations to the assistant prosecutor's statements, we find that the State's commentary was not so damaging as to require reversal. We note, first, that the State's remarks were made in response to petitioner's counsel's closing statement, in which counsel suggested that the circuit court dismissed certain counts involving R.M. because the State did not conduct an appropriate investigation. The comments, then, were not intended to divert attention, but instead to directly address an issue raised by petitioner's counsel. Furthermore, as described above, both victims offered sufficient testimony to establish petitioner's guilt. The remarks were isolated in that they were limited within the closing statement and, in fact, were ended by the circuit court in response to petitioner's counsel's objection. Upon our review, we find no prejudice and no error.

IV.

We turn to petitioner's second assignment of error, in which he argues the invalidity of our rape shield statute, which provides as follows:

> In any prosecution under this article evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct shall not be admissible: Provided, That such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto.

West Virginia Code § 61-8B-11(b) (2014). Petitioner argues that the basis of the asserted invalidity of this statute is its conflict with the former Rule 404(a) of the West Virginia Rules of Evidence[2], which provided in part:

---

[2] The West Virginia Rules of Evidence were amended by order entered on June 2, 2014, with changes effective on September 2, 2014. The rule as set forth in the body of this decision was in effect at all times relevant to the issues set forth herein.

4

Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he or she acted in conformity therewith on a particular occasion, except:

. . . .

(3) Character of Victim of a Sexual Offense. In a case charging criminal sexual misconduct, evidence of the victim's past sexual conduct with the defendant as provided for in W.Va. Code § 61–8B–11; and as to the victim's prior sexual conduct with persons other than the defendant, where the court determines at a hearing out of the presence of the jury that such evidence is specifically related to the act or acts for which the defendant is charged and is necessary to prevent manifest injustice.

We have explained the interplay between the rape shield statute and our former evidentiary rule.

> "Rule 404(a)(3) of the West Virginia Rules of Evidence provides an express exception to the general exclusion of evidence coming within the scope of our rape shield statute. This exception provides for the admission of prior sexual conduct of a rape victim when the trial court determines *in camera* that evidence is (1) specifically related to the act or acts for which the defendant is charged and (2) necessary to prevent manifest injustice." Syllabus point 3, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999).

Syl. Pt. 4, *State v. Calloway*, 207 W.Va. 43, 44-45, 528 S.E.2d 490, 491-92 (1999). In *Guthrie* and *Calloway*, we clearly stated that the former Rule 404(a)(3) provided an "express exception" to the general exclusion created by the rape shield statute. Because we have unequivocally characterized this provision as an exception, the rule and the statute are not in conflict and we find no error.

## V.

Petitioner's third assignment of error also concerns the circuit court's application of the rape shield statute, inasmuch as he argues that the circuit court erred in excluding evidence of the prior sexual histories of M.H., whom he alleges engaged in consensual sexual activity with a boyfriend, and R.M., whom he alleges was sexually abused by her biological father. We review petitioner's claims regarding the exclusion of the proffered evidence pursuant to Syllabus Point 6 of *Guthrie*, 205 W. Va. 326, 518 S.E.2d 83:

> The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

*Id*. at 330, 518 S.E.2d at 87. In formulating this test in *Guthrie*, we explained:

> The United States Supreme Court has held that rape shield statutes "represent [ ] a valid legislative determination that rape victims deserve heightened protection [.]" [*Michigan v.*] *Lucas*, 500 U.S. [145] at 150, 111 S.Ct. [1743] at 1746, 114 L.Ed.2d [205] at 212 [(1991)]. Like rape shield statutes in other jurisdictions, this State's rape shield statute was enacted to protect the victims of sexual assault from humiliating and embarrassing public fishing expeditions into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders. [Citations omitted.]

Id. at 339, 518 S.E.2d at 96.

Petitioner's contention that the evidence regarding M.H.'s sexual conduct and resulting pregnancy should have been admitted contravenes the very spirit of the law as we described in *Guthrie*. It is precisely the type of irrelevant—and certainly prejudicial—evidence from which our statute protects victims. Obviously, evidence that a young, female victim had previously engaged in sexual activity with another male could inflame or impassion the jury. The prejudicial effect is not outweighed by relevance, because the issue in this case was whether the prohibited conduct occurred, and only evidence impacting that question is relevant. Likewise, under the limited facts before us, we do not find the possibility that R.M. was previously abused by her biological father—a possibility for which petitioner has offered no evidentiary support—to have any bearing on the question of whether R.M. was sexually abused by petitioner. Allowing the introduction of evidence of a witness's past sexual behavior as described herein would permit defendants to circumvent the rape shield statute and thwart the intent of the legislature in enacting the statute. This we will not allow.

VI.

Next, we consider petitioner's argument that his constitutional right to a speedy trial was violated when the circuit court "forced" him to choose between requesting a continuance of his trial date or hiring a particular expert witness.[3] The basis for petitioner's argument appears to be that the circuit court approved his motion for a direct expense voucher to secure the expert witness, but failed to apprise petitioner that an order approving payment of direct expenses had been entered until approximately one month after entry of the order, at the pretrial hearing. At

---

[3] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

that time, petitioner's counsel told the circuit court that he "[didn't] know if [the expert witness would] have anything relevant to say" and advised that he would request a continuance if necessary. He thereafter did not request a continuance of trial, and sought no other relief from the circuit court prior to trial.

Petitioner asks that we review his claim pursuant to the standards set forth in *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686 (1992). We have applied those standards in our own jurisprudence as follows:

> A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial.

Syl. Pt. 6, *State v. Jessie*, 225 W. Va. 21, 24, 689 S.E.2d 21, 24 (2009); Syl. Pt. 2, *State v. Foddrell*, 171 W.Va. 54, 297 S.E.2d 829 (1982). Under the circumstances described herein, we find no merit to petitioner's argument that he was subjected to the possibility of delay by the circuit court. First, we point out that petitioner has described no unreasonable delay prejudicial to him, and he has offered no legal authority regarding a trial court's "forcing" a criminal defendant to forego his speedy trial rights or otherwise supporting his position. Furthermore, we note that if there was any delay, it was not attributable to the circuit court, inasmuch as the circuit court approved the requested voucher in a timely fashion, and then offered to entertain a motion for a continuance if the petitioner so required. There is no evidence that petitioner followed up on the voucher request at any time after its submission and prior to the pretrial hearing, or that he sought any relief from the circuit court. We find no error.

## VII.

We now address petitioner's fifth assignment of error, in which he argues that the circuit court allowed hearsay testimony that bolstered the testimony of M.H. and R.M. Specifically, he argues that the circuit court let Kathleen Newbrough and Barbara H. (the grandmother of M.H.) testify that R.M. and M.H., respectively, told the women that petitioner engaged them in sexual conduct. As we explained in *State v. Edward Charles L.*, we have permitted statements like these to be placed into evidence pursuant to the "other exceptions" allowed by Rule 803(24)—the substance of which is now found in Rule 807[4]—of the West Virginia Rules of Evidence, and to this end we have held that

---

[4] The West Virginia Rules of Evidence were amended by order entered on June 2, 2014, with changes effective on September 2, 2014. According to the rule commentary, Rule 807 "is a new rule that was taken verbatim from the federal rules." According to the advisory committee notes chronicling the federal change in 1997, the addition was "done to facilitate additions to Rule 803 and 804. No change in meaning is intended."

7

[t]he language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart Rule 803(24) requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interests of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence.

*State v. Edward Charles L.*, 183 W. Va. 641, 656, 398 S.E.2d 123, 138 (1990) *quoting* Syl. Pt. 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987). As in *Edward Charles L.*, wherein the victim's mother testified concerning her son's extrajudicial statements implicating the defendant, each child victim in this case testified and was available for cross-examination, and the testimony of neither Ms. Newbrough nor Ms. H. "added anything substantive to the children's testimony." Under the unique circumstances before us, including the availability of the victims for cross-examination and the relevance of the statements made to Ms. Newbrough and Ms. H. to the progression of events, we find no error.[5]

## VIII.

The final issue raised by petitioner is that the cumulative effect of the alleged errors below resulted in an unfair trial requiring reversal under the cumulative error doctrine. Cumulative error demands attention "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, [and the] conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). After review, this Court has found no legal or factual basis supporting any of the alleged assignments of error. Having found no error as described above we conclude that the cumulative error doctrine is not applicable.

For the foregoing reasons, we affirm.

Affirmed.

---

[5] We note, as we did in *Edward Charles L.,* that "[w]hen a child witness is present to testify, however, it would generally seem to be a better practice not to permit [another witness] to testify as to the child's extrajudicial statements unless such testimony clearly falls into one of the hearsay exceptions. But it is harmless when, viewed in the spectrum of all the evidence, it creates no prejudice to the defendant." *State v. Edward Charles L.*, 183 W. Va. 641, 656, 398 S.E.2d 123, 138 (1990)

8

**ISSUED:** June 12, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II